[No. H032619. Sixth Dist. Nov. 30, 2010.]

JEFFREY R. GOLIN et al., Plaintiffs and Appellants, v.
CLIFFORD B. ALLENBY et al., Defendants and Respondents.

## Counsel

Law Offices of David J. Beauvais and David J. Beauvais for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, Susan M. Carson, Susan J. King and Stephanie Wald, Deputy Attorneys General, for Defendants and Respondents Clifford B. Allenby, Terri Delgadillo, H. Dean Stiles and Kimberly Belshe.

Ann Miller Ravel, County Counsel, and Neysa A. Fligor, Deputy County Counsel, for Defendants and Respondents County of Santa Clara, Santa Clara Board of Supervisors Jamie Buckmaster, Mary Greenwood, Malorie M. Street, Jacqui Duong and Randy Hey.

Bradley, Curley, Asiano, Barrabee & Gale and Eric Gale for Defendant and Respondent San Andreas Regional Center.

Law Offices of Scott D. Pinsky, Scott D. Pinsky; and Gary M. Baum for Defendants and Respondents City of Palo Alto, Lori Krantzer and City of Palo Alto Police Department.

Hall Hieatt and Connely, Julie Grebel-Gavery; Sheuerman, Martini & Tabari and Deborah Lee Phillips for Defendant and Respondent Stanford Hospital and Clinics.

Matheny Sears Linkert & Long, Melissa D. Bickel and Andrea Christensen for Defendants and Respondents Talla House.

## OPINION

**DUFFY, J.**—Appellants Jeffrey R. Golin and Elsie Y. Golin (collectively, the Golins) appeal from the dismissal of this action after the trial court determined them to be vexatious litigants under Code of Civil Procedure section 391, subdivision (b)(2) and (3),[1] and they failed to post a $500,000 bond to continue the litigation under sections 391.3 and 391.4. The Golins contend that the order must be reversed because it found them to be vexatious litigants even though they did not meet the statutory criteria for this finding. They further contend that the order must be reversed because it determined, without legal basis, that there was no reasonable probability of their prevailing in the action, a mandatory determination under section 391.1 before the court can require a vexatious litigant to furnish security. We conclude that the trial court did not abuse its discretion in finding the Golins to be vexatious litigants under section 391, subdivision (b)(3). But because nothing in the record supports the court's conclusion that the Golins have no reasonable probability of prevailing in the action, or any part of it, we reverse the order of dismissal.

## STATEMENT OF THE CASE

### I. *Factual Background*[2]

#### A. *Historical Facts*

In 2001, the Golins' daughter Nancy, a woman in her 30's with developmental disabilities, was living in their care and custody, as she had all her life. In November of that year, Nancy was with her mother, Elsie, at Elsie's studio in Palo Alto when Nancy wandered off.[3] The Golins began looking for Nancy and called the authorities. But Nancy was not found until she returned on her own the next morning. On her return, police suggested that Nancy should be examined at Stanford Medical Center to ensure that no harm had come to her. And the incident triggered an investigation by authorities into Nancy's living circumstances.

While in the hospital, Nancy was subjected to a Welfare and Institutions Code section 5150 psychiatric hold. After a detention hearing, Nancy was ordered released and the Golins went to the hospital to pick her up. But there,

---

[1] Further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] As there has been no determination of the historical facts, we take them from the allegations of the first amended complaint and other filings in the record, doing so for background purposes only and with no law of the case effect.

[3] We sometimes refer to all three individual Golins by their first names. We do so for ease of reference and mean no disrespect.

they engaged with security guards and Nancy, ostensibly in state custody, was taken to another location unknown to the Golins. According to the Golins and despite their efforts, they did not learn of Nancy's location until 11 months later when, on the application of the State Department of Developmental Services, the probate court appointed a temporary private conservator over Nancy and set later proceedings to address her conservatorship on a long-term basis.

Meanwhile, in November 2001, the Golins were arrested on a felony charge of adult dependent abuse as a result of police investigation into Nancy's living circumstances when she wandered off. The Golins posted bail and were released, but not before Elsie was held overnight and a psychiatrist examined her in connection with a possible psychiatric detention. The criminal charges were ultimately dismissed on January 29, 2003.

### B. *The Conservatorship Proceeding*

In October 2003, the probate court conducted a three-week trial to resolve the question of Nancy's conservatorship. As noted, the proceedings were initiated by the State Department of Developmental Services (acting through the San Andreas Regional Center (SARC) and Embee Manor, where Nancy then resided), which petitioned the court for its director to serve as Nancy's permanent limited conservator. (Prob. Code, §§ 1801, 1820, subd. (a)(4).) The Golins, named as respondents and representing themselves, strenuously opposed the conservatorship and they alternatively sought an order naming themselves as Nancy's conservators. On October 22, 2003, after several judicial challenges under section 170.6 by one or both of the Golins and their unsuccessful efforts to disqualify attorneys for other parties,[4] the court

---

[4] Before the trial, the Golins had apparently challenged Judge Thomas Edwards under sections 170.1 and 170.6. Then, they challenged Judge William Martin under section 170.6 but withdrew that challenge in the face of its imminent denial. Elsie Golin renewed the challenge to Judge Martin under section 170.6 after the matter was argued and submitted and the challenge was denied as untimely. The Golins also attempted to disqualify Attorney Malorie Street from the office of the public defender, who had been appointed to represent Nancy Golin's interests, and Attorney Nancy Johnson, who represented the San Andreas Regional Center. Those attempts were unsuccessful, the court finding that both counsel had "acted professionally, ethically, and in the best interests of their respective clients." The court further found "no evidence of personal animus or bias against [the Golins]. Counsel's advocacy of positions contrary to those of [the Golins] does not support the extraordinary allegations made by [the Golins] against [counsel]. The written papers submitted to the Court during trial and pretrial, as well as the repeated arguments of both [the Golins], demonstrate a world-view of deep distrust and suspicion of authority, especially governmental authority. Notably, [the Golins] also vigorously complain about the judgment, actions, and fairness of the Court's Probate Investigators, prior [j]udges assigned to their matters—indeed all the judges of this county ('kangaroo court' referring to the dependency court, 'like political prisoners in a banana republic'—Mrs. Golin), various police departments (including the Palo Alto Police

granted relief and issued a comprehensive statement of decision. It determined that (1) Nancy lacks the capacity to care for her own physical and financial needs and therefore a limited conservatorship was justified; (2) the Golins are "unable to provide for the best interests of their daughter, Nancy Golin, because of their history of continuous conflicts with most medical and other professionals"; (3) "the history of conflict between the Golins also renders them unfit to serve as Nancy Golin's conservator"; and (4) based on numerous instances in which Nancy suffered burns, food poisoning, and many disappearances while under her parents' care, "there is clear and convincing evidence that the Golins' past history of neglect and abuse renders them unable and unfit to provide for the best interests of Nancy Golin as her conservator." The court placed Nancy in permanent conservatorship in the custody of the State Department of Developmental Services and granted enumerated powers to the director through which to act.

The court's statement of decision further noted that the Golins' conduct during the proceedings showed a clear pattern of inappropriate behavior, including witness coaching, misleading the court, evasiveness, late appearances, interruptions, and other disruptive conduct and that they had resisted providing the court with information about their finances and living situation that bore on their ability to act in the capacity of conservators over Nancy.[5]

### C. The Golins' Federal Action

The day after the probate court issued its statement of decision resolving the question of Nancy's conservatorship, the Golins filed an action in the federal district court. As self-represented litigants, they named themselves and Nancy as individual plaintiffs. They named as defendants, among others, multiple local and state agencies, and employees of those agencies—virtually everyone affiliated with Nancy's conservatorship proceeding and her ongoing

---

Department), various physicians and health care entities (including the Stanford Medical Center and its staff), SARC, APS, the District Attorney's Office, Santa Clara County Counsel, the State Department of Developmental Services and various state licensing boards. [The Golins] are extremely suspicious of the actions of many of the governmental agencies and allege a conspiracy intended to deprive them of their rights and to disadvantage them. [The Golins] accuse Ms. Street of conspiring with the District Attorney's Office to prosecute [them] on various charges so that some advantage might obtain in this proceeding. The Court notes that the Golins have sought, and are seeking, relief in Federal Court from their perceived disadvantages caused by these various governmental entities."

[5] The Golins appealed from the order but their appeal was dismissed under former rule 17(a) of the California Rules of Court for the appellants' failure to timely file their opening brief. (See now rule 8.220(a) of the Cal. Rules of Court.)

custody and care. For example, in addition to Clifford B. Allenby, the former Director of the State Department of Developmental Services, named as defendants were Lori Kratzer of the City of Palo Alto Police Department, who had investigated reports that the Golins had neglected and abused Nancy, and Malorie Street, the attorney from the office of the public defender who had been appointed to represent Nancy's interests in the conservatorship proceeding.

The Golins' 69-page first amended complaint in the federal court alleged in 12 counts civil rights violations (due process and equal protection), a conspiracy to deprive them and Nancy of their civil rights based on the removal of Nancy from the Golins' custody, and deficiencies in Nancy's care and treatment since then.[6] They also alleged fraud, slander, malicious criminal prosecution, wrongful imprisonment, and infliction of emotional distress. They sought damages and injunctive relief, as well as Nancy's return to their custody, but the complaint did not specify which plaintiffs were asserting which claims.

In April 2004, the district court granted a defense motion to dismiss the Golins' first amended complaint under rule 12(b)(6) of the Federal Rules of Civil Procedure (28 U.S.C.). As to plaintiff Nancy Golin, who as a conservatee lacks capacity to appear in an action on her own behalf, the court's order determined that the Golins lacked standing to pursue her claims, concluding that under rule 17 of the Federal Rules of Civil Procedure (28 U.S.C.) and California law (§ 372) a conserved person must appear in an action through a guardian approved by the court or an appointed conservator. The order observed that where an incompetent person is so represented, it is only when the representative is unable to or refuses to act, or there is a conflict between the person and their representative, that a "next friend," as the Golins attempted to qualify themselves, may appear in an action on a conservatee's behalf. And the court concluded that none of these circumstances applied. Moreover, the court noted, constitutional challenges in the federal court may not be vicariously asserted for another through a nonlawyer.

The court also viewed the Golins' federal action that in part sought to regain custody over Nancy as an attempt to supplant the California probate court's prior order, which had already decided Nancy's status as a conservatee and her custodial needs, retaining ongoing jurisdiction to address these

---

[6] Their filed complaint was apparently not the same document that was served on defendants purportedly as the complaint. Accordingly, the Golins were permitted leave to file the correct version of the complaint, which resulted in the first amended complaint.

issues. Citing federal abstention doctrines and jurisdictional grounds—centered on the lack of authority of federal courts to directly or indirectly review final state court determinations—the court rejected this attempt.[7] And the court noted that because the Golins had a remedy in state court for asserted wrongs arising from the conservatorship proceedings—a challenge to the conservator through a removal proceeding under the Probate Code—there was no deprivation of due process. As to most of the Golins' state law claims that the court perceived as independent from a collateral attack on the probate court's order, the court declined to exercise supplemental jurisdiction to adjudicate them in the absence of an independent basis for federal jurisdiction, concluding that the claims could be brought in state court. But the court did determine that for section 1983 (42 U.S.C. § 1983) purposes, the Golins had failed to state a claim for malicious criminal prosecution on which relief could be granted. Finally, the court's order rejected as frivolous the Golins' challenge (asserted three times) to United States District Court Judge William Alsup's ability to be impartial and to decide the case according to law. The Golins appealed to the Ninth Circuit Court of Appeals, which affirmed the dismissal of the action in June 2005. The Golins then petitioned for a writ of certiorari in the United States Supreme Court, which was denied in March 2006.

---

[7] The court cited *Rooker v. Fidelity Trust Co.* (1923) 263 U.S. 413, 415–416 [68 L.Ed. 362, 44 S.Ct. 149] and *D. C. Court of Appeals v. Feldman* (1983) 460 U.S. 462, 482 [75 L.Ed.2d 206, 103 S.Ct. 1303] (*Rooker-Feldman* doctrine) as well as *Worldwide Church of God v. McNair* (9th Cir. 1986) 805 F.2d 888, 891 and *Dubinka v. Judges of Superior Court* (9th Cir. 1994) 23 F.3d 218, 221 in support of its conclusion that a federal court lacks authority to review a final state court judicial decision even when the challenge potentially involves federal constitutional issues and when a "federal claim is 'inextricably intertwined' with the merits of the state-court decision." The court assessed that the claims made on Nancy's behalf in the district court were all related to the question of who had the lawful right to her custody and care—the precise issue decided by the probate court in the conservatorship proceeding. And the court rejected the Golins' arguments that they were not seeking to relitigate issues tried in the probate court but instead were merely seeking redress for wrongs arising from common facts. The court also rested its decision on abstention under the *Younger* doctrine (*Younger v. Harris* (1971) 401 U.S. 37, 42 [27 L.Ed.2d 669, 91 S.Ct. 746]; *Middlesex Ethics Comm. v. Garden State Bar Assn.* (1982) 457 U.S. 423, 431 [73 L.Ed.2d 116, 102 S.Ct. 2515]; *Huffman v. Pursue, Ltd.* (1975) 420 U.S. 592, 604 [43 L.Ed.2d 482, 95 S.Ct. 1200]), which confirmed Congress's intent to permit state courts to try cases free from federal court interference and under appropriate circumstances, bars the prosecution of a concurrent federal action. Abstention is warranted where the state proceeding is ongoing (as the court considered the conservatorship proceedings with continuing jurisdiction over Nancy to be); implicates important state interests; and provides the plaintiff an adequate opportunity to litigate federal claims. (*The San Remo Hotel v. City and County of San Francisco* (9th Cir. 1998) 145 F.3d 1095, 1103.) If the *Younger* doctrine applies, the concurrent federal action must be dismissed, as the action was here. (*Delta Dental Plan of California, Inc. v. Mendoza* (9th Cir. 1998) 139 F.3d 1289, 1294.)

## II. *Procedural Background*

### A. *The Complaint*

On April 26, 2006, the Golins, through New York Counsel Gerard W. Wallace (who appeared as counsel *pro hac vice*),[8] filed this action in the Sacramento County Superior Court. Again named as individual plaintiffs were the Golins and Nancy. There were numerous named defendants, again local and state agencies and their employees involved in events leading to Nancy's conservatorship and her care.[9] The 110-page complaint purported to assert 19 causes of action, many of which had been similarly alleged in the federal action. One distinction was that in this action, the Golins did not expressly seek to regain custody over Nancy, as they had in the federal proceedings. But the core factual allegations giving rise to the claims all related to the search of the Golins' home in connection with Nancy's brief disappearance, the criminal prosecution of the Golins, the removal of Nancy from their custody, and Nancy's treatment while in state custody.

Shortly after filing the complaint, which was not immediately served, the Golins submitted an ex parte application, with no notice to any defendants, for an order appointing Elsie as Nancy's guardian ad litem to represent her interests in the action. The application, which was granted, contended that the appointment was needed because Nancy's conservator was a defendant in the action and it was thus necessary for a third party to represent Nancy's interests and protect her rights as asserted in the complaint.

In August 2006, the Golins filed their 135-page verified first amended complaint, the operative pleading in the action. It named additional parties as

---

[8] Attorney Wallace's application for appointment as counsel *pro hac vice* was initially denied because there was no California attorney associated as attorney of record. That defect was corrected at some point with Attorney Geoffrey V. White from San Francisco later appearing on plaintiffs' pleadings as local counsel of record. Attorney Wallace was thereafter appointed as counsel *pro hac vice*.

[9] Defendants (capacities roughly as described in complaint) who are also respondents here are the City of Palo Alto; Lori Kratzer, City of Palo Alto Police Department; City of Palo Alto Police Department; Clifford B. Allenby, former Director of the State Department of Developmental Services; Terri Delgadillo, Director of the State Department of Developmental Services; H. Dean Stiles, Office of Legal Affairs, State Department of Developmental Services; S. Kimberly Belshé, secretary, California Health and Human Services Agency; County of Santa Clara; Santa Clara County Board of Supervisors; Jamie Buckmaster, Santa Clara County Adult Protective Services; Mary Greenwood, Santa Clara County Public Defender; Malorie M. Street, deputy public defender; Jacqueline Duong, office of the county counsel; Randy Hey, deputy district attorney; San Andreas Regional Center, Inc.; Roselily and Anselmo Talla, doing business as Talla House; Talla Home Care; and Stanford Hospital and Clinics. There are other named defendants but they may have been dismissed from the action before the court's order of dismissal on appeal here.

defendants and purported to allege 17 causes of action, all of which stemmed from the same essential operative facts alleged in the initial complaint.[10]

## B. *Change of Venue*

In July 2006, before any formal appearance by defendants in the action, some of them moved on numerous grounds to change venue from Sacramento County to Santa Clara County. Over the Golins' objection, the motion was granted by written order filed October 10, 2006, under section 394. The Golins, with Jeffrey now representing himself, moved for reconsideration of the order, but in response, the court affirmed its prior order transferring venue to Santa Clara County. The Golins petitioned for a writ of mandate in the Third District Court of Appeal, but that was denied. They also petitioned for review in the California Supreme Court, but that too was denied.

Before the case was formally transferred to Santa Clara County, and although the entire action was already stayed, defendant SARC sought a stay of the court's prior order appointing Elsie Golin as Nancy's guardian ad litem pending a formal motion to vacate the order. The asserted basis of the request was that a specific stay of the guardian ad litem order was necessary because the Golins were improperly using it to acquire Nancy's medical records. The application for a stay of the order was heard by a different judge than the one who had originally granted the order. Rather than just stay the order as requested, the court vacated it, concluding that Elsie had been erroneously appointed guardian ad litem for Nancy without notice to anyone and without

---

[10] Specifically, the causes of action were labeled "Denial of Freedom from Unreasonable Personal Seizures and Warrantless Searches" (first cause of action); "Denial of Natural Right of Familial Association, Loss of Consortium, Free Speech" (second cause of action); "Denial of Due Process, Fifth Amendment extended to States by Fourteenth Amendment—Constitutional Tort [section] 1983" (third cause of action); "Fraud, Forgery, Misrepresentation—Civil Tort" (fourth cause of action); "Obstruction of Justice, Concealment of Evidence, Concealment of Witnesses, Suborning of Perjury, Witness Tampering, Corruption" (fifth cause of action); "Common Law Conspiracy of State Officials to Deny Civil Rights" (sixth cause of action); "Negligent and Intentional Infliction of Emotional Distress, Eight[h] Amendment Cruel and Unusual Punishment (seventh cause of action); "Breach of Statutory Duty [arising under the] Welfare and Institutions Code" (eighth cause of action); "Breach of Title II, Americans with Disabilities Act (ADA) (42 U.S.C. § 12132)—Statutory Tort adopted by state Unruh Act, California Civil Code [section] 1801 et seq[.]" (ninth cause of action); "Negligence and Indifference to Medical Care, Breach of Fiduciary Duty" (10th cause of action); "Attorney Malpractice—Failure of Duty to Client, Advocating Chemical Assault, Sixth Amendment Denial of Representation, Fraud Upon Courts, Concealment of Evidence, Obstruction of Discovery, Denial of Due Process, Wrongful Imprisonment, Conspiracy" (11th cause of action); "Abduction, Wrongful Imprisonment—Tort Claim" (12th cause of action); "Slander and Defamation of Character" (13th cause of action); "Malicious Prosecution—Tort Claim" (14th cause of action); "Wrongful Termination—Tort Claim" (15th cause of action); "Chemical Assault and Battery—Tort" (16th cause of action); "Violation of Elder Abuse and Dependent Adult Civil Protection Act [(Welf. & Inst. Code, §§ 15657–15657.5)]" (17th cause of action).

the court having been provided the Santa Clara County Superior Court's statement of decision in the probate proceeding in which Nancy had been conserved, which the court then had before it. The court also agreed that the Golins were exercising the appointment powers in a manner that could be harmful to Nancy. The vacation of the guardian ad litem order was without prejudice to Elsie Golin renewing her application once venue of the action was formally transferred to Santa Clara County.

## C. *Initial Proceedings in Santa Clara County*

When the action was first transferred to Santa Clara County, Elsie Golin once again applied ex parte, without notice to defendants, for an order appointing her as Nancy's guardian ad litem in the action. The application, which was filed by Attorney Lara Shapiro as newly associated counsel for Elsie Golin, was granted by Judge Eugene Hyman on April 9, 2007. Two weeks later, SARC moved ex parte to vacate the order, again on the bases that no notice had been given to defendants of Elsie's application and that Judge Hyman had not been provided with Judge Martin's decision in the prior probate proceeding determining that the Golins were unfit to serve as Nancy's conservators. Judge Kevin Murphy granted SARC's application, vacating and annulling Elsie's most recent appointment as Nancy's guardian ad litem "without prejudice" to Elsie reapplying.

Elsie promptly reapplied on noticed motion to be appointed Nancy's guardian ad litem in the action. She alternatively sought the appointment of John Lehman, the "visit supervisor" for the Golins' visits with Nancy, as guardian ad litem. Defendants opposed the motion, which was heard before Judge Hyman, sitting in probate. The court determined that Nancy needed the appointment of a guardian ad litem for purposes of the action, but appointed Claudia Johnson, an "independent private professional who will also retain counsel," and not Elsie Golin as requested.

But in June 2007, Claudia Johnson moved the court for an order vacating her appointment on the basis that she was unaware that the court had been considering appointing her as guardian ad litem for Nancy, that she had not received any notice of that, and that time commitments in other cases precluded her ability to act in this case for Nancy. The court granted relief and vacated her appointment, leaving Nancy, a conservatee, without a representative to act on her behalf in the action.

Meanwhile, different defendants filed several motions challenging the first amended complaint, including demurrers, motions to strike, motions for judgment on the pleadings, and an anti-SLAPP (strategic lawsuit against public participation) motion (§ 425.16). The motions were initially set to be

heard in June 2007. Around this time, Lara Shapiro's representation of Elsie terminated such that Elsie remained represented in the action by attorneys of record Geoffrey White and Gerard Wallace with Jeffrey Golin continuing to represent himself.

Before the defense motions could be heard, the Golins challenged Judge Kevin Murphy, to whom the pending matters in the case had been assigned for decision, for cause under section 170.1. Judge Murphy recused himself and the matters were taken off calendar.

The Golins also filed a motion to change venue on the asserted ground that they could not receive a fair trial in Santa Clara County. And they moved ex parte for reconsideration of Elsie's application for an order appointing her as Nancy's guardian ad litem in view of Claudia Johnson's inability to serve in that role. Jeffrey Golin also filed a for-cause challenge under section 170.1 to Judge Eugene Hyman, who had denied Elsie's previously noticed guardian ad litem application and appointed Claudia Johnson instead. After consideration by a judge assigned from another county, the challenge to Judge Hyman was denied.

The pending matters were then reassigned to Judge Neal A. Cabrinha, whom Jeffrey Golin also challenged for cause under section 170.1, and the matters were continued. After consideration by a different judge assigned from an outside county, the challenge to Judge Cabrinha was denied. Jeffrey Golin also filed a peremptory challenge to Judge Cabrinha under section 170.6. But on July 23, 2007, one of the defendants (Jacqueline Duong) was appointed as a judge to the Superior Court of Santa Clara County, "necessitating the recusal of all judges of the Superior Court of the County of Santa Clara," and the entire Santa Clara County bench disqualified itself from hearing the case.[11] The matter was then assigned by the Judicial Council to Judge Thomas P. Breen (ret.) and the pending matters remained set for hearing on August 24, 2007.

On August 22, 2007, the Golins amended their motion for change of venue, adding as a basis for it that they could not receive a fair trial in Santa Clara County because the entire bench had recused itself. Judge Breen denied the motion by written order filed two days later. The defense motions and challenges to the first amended complaint that had been pending since June were again continued to September 17, 2007, and additional challenges to the pleading were filed by one defendant and joined by others. The Golins filed a

---

[11] The conclusion that all judges of the Superior Court of Santa Clara County were required to recuse themselves from this case as a result of Jacqueline Duong's judicial appointment was apparently reached collectively by the entire court. But the record does not reveal how the court reached this conclusion or on what particular basis.

motion for reconsideration of their previous motion for change of venue, which was calendared for the same date. And on that date, Jeffrey Golin filed a challenge of Judge Breen for cause under section 170.1. At the September 17, 2007 hearing, the court rejected the challenge as untimely and the remaining pending matters were continued again.[12] The next day, Jeffrey Golin filed a "Notice of Disqualification" of Judge Breen, this time under section 170.3, asserting among other things that Judge Breen had himself improperly ruled on the prior for-cause challenge and that he must recuse himself from the case. At the September 21, 2007 continued hearing of the pending motions, Judge Breen recused himself from the case in "the interest of justice," the judge perceiving Jeffrey Golin's challenges to him as a "distraction" to the matters at hand, and the pending matters were again continued.

The Golins then filed a "renotice" of the prior motion for reconsideration of Elsie's application for an order to be appointed Nancy's guardian ad litem, the prior reconsideration motion never having been ruled upon after the challenge to Judge Hyman, who had initially ruled on the matter, and the subsequent recusal of the entire Santa Clara County bench.[13] And they filed a motion for change of venue "on grounds of changed circumstances and forum non-conveniens," citing again their inability to receive a fair trial in Santa Clara County due to the recusal of the bench but also the inconvenience of having an out-of-county judge temporarily assigned by the Judicial Council in that there was no judge readily available in the county for ex parte or urgent matters and for regularly scheduled hearings.[14]

### D. *The Vexatious Litigant Motion and the Court's Order*

On October 11, 2007, defendant City of Palo Alto filed a motion to have the Golins declared vexatious litigants within the meaning of section 391, subdivision (b)(2) and (3); to require them to post security to continue the litigation; and to have the court issue a prefiling order requiring the Golins to obtain the signature of the presiding judge before filing any future similar claims. The asserted grounds for the motion were that the Golins' claims had been fully litigated in previous proceedings, the present action constitutes mere relitigation of their meritless claims, and the Golins had engaged in delaying and harassing tactics by filing frivolous and repetitive pleadings in

---

[12] At the hearing, Attorney David Beauvais, who represents appellants on appeal, appeared specially on behalf of Elsie and Nancy Golin, his first appearance in the case.

[13] The document showed that David Beauvais continued to appear specially for Elsie and Nancy Golin, as he did through the conclusion of the case in the trial court.

[14] Although not set out here in detail, the record is also replete with numerous filings and other applications for ex parte relief by the Golins, many of which were outside of applicable filing deadlines, page limitations, or other regular procedural requirements.

the action.[15] But no evidence going to the merits of the case to show that there was no likelihood of the Golins' prevailing was offered or argued in support of the motion. The other defendants joined the motion and the case was assigned by the Judicial Council to Judge J. Michael Byrne (ret.) from outside of Santa Clara County.

The Golins opposed the motion and filed as part of their opposition declarations from Elsie's Attorney Gerard Wallace and Attorney David Beauvais, who had specially appeared on her behalf, to the general effect that neither was acting as a mere "puppet" for the Golins even though Jeffrey Golin as a self-represented litigant was "doing the footwork" for the case and was performing legal research that each attorney said he had reviewed. And Jeffrey Golin filed a peremptory challenge to Judge Byrne under section 170.6, which Judge Byrne denied as untimely and as being statutorily unavailable to Jeffrey Golin because he had already exercised his right to file a peremptory challenge in the case.

As part of the City of Palo Alto's reply and supplemental reply to the motion, it offered evidence that Elsie's attorney, Geoffrey White, had done nothing in the case other than sign on as local counsel to Attorney Wallace's *pro hac vice* application and that the attorneys' signatures on the Golins' opposition to the vexatious litigant motion, and the Wallace and Beauvais declarations filed in support of it, had all actually been signed by someone other than the attorneys themselves. Moreover, Attorney Beauvais had not substituted in or associated as counsel of record for Elsie Golin, continuing to appear specially for her. In addition, the City of Palo Alto offered evidence that the signatures of third parties on multiple proofs of service for documents filed by the Golins were forged, as the third parties so testified at the hearing.[16] As to the attorneys' signatures on their declarations, they each offered at the hearing that they had authorized the Golins to sign them on their respective behalf.

---

[15] Although the filing of the vexatious litigant motion otherwise stayed the action under section 391.6, the Golins thereafter filed a motion to set aside as void the previous two orders that had removed Elsie Golin as Nancy's guardian ad litem. The basis for the motion was that the two prior orders appointing Elsie, both of which had been sought ex parte and without notice to defendants, were set aside by judges other than those who had issued the orders, allegedly violating the principle that a judge of one department may not overrule a judge of another department and resulting in void orders. The result, the Golins contend here as they did below, is that Elsie remains Nancy's guardian ad litem.

[16] The third parties were employees of Fed Ex/Kinko's in Palo Alto, where the Golins apparently had copied documents, and their business cards were available at that establishment. The third parties testified that the signatures on proofs of service bearing their names were not theirs and that they had never signed or served such documents for the Golins. And counsel for defendants pointed out that they regularly did not receive documents served by the Golins on time or as represented as having been served by mail on a certain date.

During the hearing, Judge Byrne noted that part of what he had to decide was whether there was a likelihood of the Golins' prevailing in the case and he expressed some reservation based on what was before him about coming to that conclusion. He also pressed the moving parties to specify what particular filings by the Golins in the case could be characterized as abusive, repetitive, or frivolous. But defendants were unable to then provide a specific response, offering to later compile a list and generally describing the Golins' various unsuccessful and repetitive efforts to have a guardian ad litem appointed for Nancy and to change venue. But defendants returned to their general point that the entire action constituted mere relitigation of issues that had already been decided in the two prior proceedings, though they did not provide any real analysis for this conclusion in their papers or otherwise.

The court admitted into evidence at the hearing the declaration of David Beauvais that Jeffrey Golin had signed, two forged proofs of service, and the court's register of actions on which defense counsel had marked 29 documents filed by the Golins that counsel contended were either "amended or supplemental" to documents already filed or constituted repetitive filings.[17]

In announcing his ruling from the bench, Judge Byrne noted that the court register of actions reflected numerous filings by the Golins, including multiple requests for reconsideration of prior rulings, in connection with the guardian ad litem and venue issues. The court questioned whether this was sufficient to find a party vexatious. But it observed that though each of the Golins' filings viewed in isolation might be reasonable, it was when the court considered the additional time and delay necessitated by the Golins' revisitation of issues and the volume of their supplemental and amended filings that a "level of vexatiousness" was reached, speaking to an improper attempt by the Golins to "grind down the other side" or keep them from "being able to move forward" in the litigation. This, the court concluded, "created an unmeritoriousness to the [filings] themselves."[18] As a result, the court granted the motion determining the Golins to be vexatious litigants and imposed a condition that they post a bond in the amount of $500,000 in order to continue with the litigation. When counsel for Elsie Golin questioned whether the court had addressed the likelihood of the Golins' prevailing in the action in its determination, which the statute required as a condition to the bond

---

[17] In their brief on appeal, respondents list 85 documents filed by the Golins in the case that respondents contend supported the trial court's "finding of frivolousness and vexatiousness under" section 391, subdivision (b)(3). Included in the list are the Golins' oppositions to respondents' various motions and demurrers, substitutions of attorney and an association of counsel, and the Golins' designations of the record on appeal, none of which could be considered frivolous for purposes of the vexatious litigant determination.

[18] The court also later said that it had considered the forged proofs of service to reach its conclusion that the Golins were abusing court processes by their actions rather than just pursuing meritorious claims.

requirement, the court said it had relied on the district court's order dismissing the Golins' federal action in reaching the conclusion that the Golins were unlikely to prevail in this case. Finally, the court set a date by which the Golins would have to post the bond or face dismissal and it issued an order to show cause to this effect. The court's written order filed after the hearing additionally specified that the Golins had qualified as vexatious litigants under section 391, subdivision (b)(2) and (3) and it also imposed a prefiling requirement that they obtain the signature of the presiding judge before commencing any further actions as self-represented litigants.

### E. *The Dismissal of the Action*

The Golins failed to post the bond as required by the court's order. At the order-to-show-cause hearing that followed, the court dismissed the entire action, with prejudice, signing an order so providing.[19] Judgment was later entered. The Golins appealed from both the order of dismissal and judgment.

### DISCUSSION

### I. *The Statutory Scheme*

The vexatious litigant statutes, section 391 et seq., which were enacted in 1963, provide two distinct and cumulative remedies against vexatious litigants, both of which were invoked here.[20] (*Holcomb v. U.S. Bank Nat. Assn.*

---

[19] At the hearing, the Golins attempted to distinguish claims made on their behalf from those made on Nancy's behalf, which they argued should not be dismissed as Nancy had not been designated a vexatious litigant subject to the bond requirement. In an attempt to save her claims from dismissal, the Golins brought two people to the hearing, either of whom they contended was suitable and qualified to act as Nancy's guardian ad litem in the case. But the court rejected the Golins' proposal, noting that Nancy could assert her own claims at any time through a guardian ad litem properly appointed by the probate court and that in this case, she was not a proper party because there was no authority authorizing the Golins to assert claims on her behalf. Dismissal of the entire action under the vexatious litigant statutes was therefore appropriate in the court's view, including those claims brought on Nancy's behalf. The dismissal left unresolved defendants' multiple pending motions challenging the first amended complaint.

[20] A "vexatious litigant" is described at subdivision (b) of section 391, a definitional section, as a person who "does any of the following: [¶] (1) In the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person or (ii) unjustifiably permitted to remain pending at least two years without having been brought to trial or hearing. [¶] (2) After litigation has been finally determined against the person, repeatedly relitigates or attempts to relitigate, in propria persona, either (i) the validity of the determination against the same defendant or defendants as to whom the litigation was finally determined or (ii) the cause of action, claim, controversy, or any of the issues of fact or law, determined or concluded by the final determination against the same defendant or defendants as to whom the litigation was finally determined. [¶] (3) In any litigation while acting in

(2005) 129 Cal.App.4th 1494, 1499 [29 Cal.Rptr.3d 578] (*Holcomb*).) The first of these remedies is an order to furnish security, as described in section 391.3.[21] A defendant obtains this remedy, as was done here, by bringing a motion under section 391.1,[22] which requires determinations that the plaintiff is a vexatious litigant and that there is no reasonable probability that he or she will prevail on the merits in the action. If the court issues an order to furnish security, the action is automatically stayed from the time the motion was filed until 10 days after the plaintiff posts the required security. (§ 391.6.) If the plaintiff fails to post the security, the action "shall be dismissed as to the defendant for whose benefit it was ordered furnished." (§ 391.4.)

Section 391.7 provides the second and additional remedy. It authorizes the court to "enter a prefiling order which prohibits a vexatious litigant from filing any new litigation in the courts of this state in propria persona without first obtaining leave of the presiding judge of the court where the litigation is proposed to be filed." (§ 391.7, subd. (a).) The presiding judge may allow the filing of the new action "only if it appears that the litigation has merit and has not been filed for the purposes of harassment or delay. The presiding judge may condition the filing of the litigation upon the furnishing of security for the benefit of the defendants as provided in Section 391.3." (§ 391.7, subd. (b).)

■ " 'The vexatious litigant statutes were enacted to require a person found a vexatious litigant to put up security for the reasonable expenses of a defendant who becomes the target of one of these obsessive and persistent litigants whose conduct can cause serious financial results to the unfortunate object of his attack. The purpose of the statutory scheme is to deal with the problem created by the persistent and obsessive litigant who has constantly pending a number of groundless actions, often against the judges and other court officers who decide or were concerned in the decision of previous actions adversely to him.' " (*Holcomb, supra*, 129 Cal.App.4th at p. 1504,

---

propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay. [¶] (4) Has previously been declared to be a vexatious litigant by any state or federal court of record in any action or proceeding based upon the same or substantially similar facts, transaction, or occurrence."

[21] Section 391.3 provides: "If, after hearing the evidence upon the motion, the court determines that the plaintiff is a vexatious litigant and that there is no reasonable probability that the plaintiff will prevail in the litigation against the moving defendant, the court shall order the plaintiff to furnish, for the benefit of the moving defendant, security in such amount and within such time as the court shall fix."

[22] Section 391.1 provides: "In any litigation pending in any court of this state, at any time until final judgment is entered, a defendant may move the court, upon notice and hearing, for an order requiring the plaintiff to furnish security. The motion must be based upon the ground, and supported by a showing, that the plaintiff is a vexatious litigant and that there is not a reasonable probability that he will prevail in the litigation against the moving defendant."

quoting *First Western Development Corp. v. Superior Court* (1989) 212 Cal.App.3d 860, 867–868 [261 Cal.Rptr. 116].) It is to curb misuse of the court system by those acting as self-represented litigants who repeatedly relitigate the same issues. " 'Their abuse of the system not only wastes court time and resources but also prejudices other parties waiting their turn before the courts.' " (*Singh v. Lipworth* (2005) 132 Cal.App.4th 40, 44 [33 Cal.Rptr.3d 178].)

When considering a motion to declare a litigant vexatious under section 391.1, the trial court performs an evaluative function. The court must weigh the evidence to decide both whether the party is vexatious based on the statutory criteria and whether he or she has a reasonable probability of prevailing. (*Moran v. Murtaugh Miller Meyer & Nelson, LLP* (2007) 40 Cal.4th 780, 786 [55 Cal.Rptr.3d 112, 152 P.3d 416] (*Moran*).) Accordingly, the court does not assume the truth of a litigant's factual allegations and it may receive and weigh evidence before deciding whether the litigant has a reasonable chance of prevailing. (*Id.* at p. 785, fn. 7.)

II. *Appealability*

■ An order determining a party to be a vexatious litigant and requiring the posting of security under section 391.3 is not directly appealable. But if the plaintiff subsequently fails to furnish security, an appeal lies from the subsequent order or judgment of dismissal that follows under section 391.4. (*Childs v. PaineWebber Incorporated* (1994) 29 Cal.App.4th 982, 985, 988 [35 Cal.Rptr.2d 93]; *Roston v. Edwards* (1982) 127 Cal.App.3d 842, 846 [179 Cal.Rptr. 830] (*Roston*).) The Golins have appealed from the order of dismissal, and the trial court's prior determinations declaring them to be vexatious litigants and requiring them to post security are accordingly properly reviewable in this appeal.[23]

Respondents challenge the Golins' right to bring this appeal without their first having obtained leave to do so from the presiding justice of this court. As noted, under section 391.7, a party who has been declared a vexatious litigant and who is the subject of a section 391.7 prefiling order as the Golins are here cannot file or maintain litigation as a self-represented litigant without first obtaining leave of the presiding judge of the court where the litigation is or would be venued. This bar extends to appeals such that a vexatious litigant contemplating a propria persona appeal must first obtain permission from the presiding justice of the appropriate reviewing court. (*McColm v. Westwood Park Assn.* (1998) 62 Cal.App.4th 1211, 1216–1217 [73 Cal.Rptr.2d 288].)

---

[23] On February 29, 2008, the court entered judgment but because the December 11, 2007 order of dismissal was itself appealable as a final judgment, it was not necessary for the Golins to separately appeal from the later judgment.

The Golins are not, however, pursuing this appeal as self-represented litigants, whether actually or de facto. They are represented by able counsel and, based on the quality of their briefing on appeal, as opposed to many of their papers filed in the trial court, we surmise that neither of the Golins has ghostwritten their appellate briefs with their attorney's name and signature merely affixed. It is obvious in this appeal that counsel of record for the Golins is not acting as a mere puppet for either of them and the bar of section 391.7's prefiling requirement applicable to self-represented vexatious litigants accordingly does not apply to this appeal. (Cf. *Muller v. Tanner* (1969) 2 Cal.App.3d 438, 444 [82 Cal.Rptr. 734] (*Muller*) [vexatious litigant statutes providing for dismissal of action may apply even when party is represented by counsel in the action, which merely realleged sham allegations of prior pleading]; *In re Shieh* (1993) 17 Cal.App.4th 1154, 1166–1168 [21 Cal.Rptr.2d 886] (*Shieh*) [vexatious litigant subject to new prefiling order in Court of Appeal notwithstanding representation by counsel on appeal as it was apparent that litigant himself and not counsel continued to prepare filed documents].) We accordingly decline to dismiss the appeal, readily dispensing with this challenge to appealability.

III. *Standard of Review*

The trial court exercises its discretion in determining whether a person is a vexatious litigant. Review of the order is accordingly limited and the Court of Appeal will uphold the ruling if it is supported by substantial evidence. Because the trial court is best suited to receive evidence and hold hearings on the question of a party's vexatiousness, we presume the order declaring a litigant vexatious is correct and imply findings necessary to support the judgment. (*Bravo v. Ismaj* (2002) 99 Cal.App.4th 211, 219 [120 Cal.Rptr.2d 879]; *Morton v. Wagner* (2007) 156 Cal.App.4th 963, 969 [67 Cal.Rptr.3d 818].) Of course, we can only imply such findings when there is evidence to support them. When there is insufficient evidence in support of the designation, reversal is required. (*Roston, supra,* 127 Cal.App.3d at p. 848.)

Likewise, a court's decision that a vexatious litigant does not have a reasonable chance of success in the action is based on an evaluative judgment in which the court weighs the evidence. If there is any substantial evidence to support the court's determination, it will be upheld. (*Moran, supra,* 40 Cal.4th at pp. 784–786.) But questions of statutory construction or interpretation are still reviewed de novo, as are questions of law. (*Holcomb, supra,* 129 Cal.App.4th at pp. 1498–1499.)

## IV. *The Court Did Not Abuse Its Discretion in Finding the Golins to Be Vexatious Litigants Under Section 391, Subdivision (b)(3)*[24]

■ The Golins challenge the trial court's determination that they qualified as vexatious litigants under section 391, subdivision (b)(3). As noted, this statute provides in pertinent part that a vexatious litigant is a person who "[i]n any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers . . . *or* engages in other tactics that are frivolous *or* solely intended to cause unnecessary delay." (§ 391, subd. (b)(3), italics added.)

The first element of their challenge relates to whether the Golins were acting in propria persona in the litigation. Jeffrey Golin began representing himself early in the case and he did so through its termination. There is accordingly no question that as to this element, the statute is satisfied as to him. The thornier question is whether Elsie Golin can be said to have been acting in propria persona when she had counsel of record (Attorneys White and Wallace throughout and Shapiro during some of the time).[25]

Respondents observe that even though Elsie was technically represented by counsel, there is evidence in the record that Attorney White had nothing to do with the Golins' litigation activity other than signing Attorney Wallace's *pro hac vice* application. They further point out that there is evidence in the record that Attorney Wallace's actual representation of Elsie in the action was limited in that Jeffrey Golin was performing the legal research on which Wallace relied as well as drafting and serving legal documents for himself and Elsie. Jeffrey even sometimes signed Wallace's name not just on legal memoranda but also on a declaration purporting to be that of Wallace and he did the same with Attorney Beauvais, albeit with the attorneys' approval as to the declarations.[26] There is also evidence in the record that Jeffrey Golin forged proofs of service relating to documents on which Wallace's name appeared as counsel and that service of legal documents on the Golins' behalf

---

[24] The court's written order also concluded that the Golins were vexatious litigants under section 391, subdivision (b)(2) but in concluding that the court did not abuse its discretion in finding them vexatious under section 391, subdivision (b)(3), we need not address this alternative basis.

[25] Attorney David Beauvais appeared specially for Elsie Golin beginning on or about September 15, 2007, through dismissal of the action. We do not include this representation for purposes of our analysis because Beauvais never formally became counsel of record by either substitution of attorney or association of counsel.

[26] Our own review of the record suggests that unlike their appellate briefs, many documents filed jointly for the Golins in the trial court were not prepared by a lawyer. Their regular flouting of applicable rules and deadlines with respect to their joint filings also lends credence to the suggestion that the Golins' litigation activities were not being adequately supervised or controlled by an attorney.

was frequently irregularly performed, suggesting that Wallace exercised little or no control or supervision over Jeffrey Golin, who was acting for Elsie Golin, Wallace's client, in matters pertaining to the day-to-day conduct of the litigation.[27]

Based on this evidence, respondents cite *Muller* and *Shieh* for the general proposition that where counsel functions as a mere puppet by only nominally appearing for a party who is effectively acting as a self-represented litigant, and who is actually controlling the conduct of the litigation by drafting pleadings and other legal documents, the representation is a sham and it will not defeat application of the vexatious litigant statutes. (*Muller, supra*, 2 Cal.App.3d at p. 444; *Shieh, supra*, 17 Cal.App.4th at pp. 1167–1168.) The Golins counter that neither case applies because in each, the party had been declared a vexatious litigant while acting propria persona in a prior action, and it was only in the subsequent action where the party's attorney representation was disregarded in order to apply the vexatious litigant remedies.

■ While it is true that the plaintiffs in *Muller* and *Shieh* had each been declared a vexatious litigant in a prior action and the Golins have not, the holdings of these cases do not rest on this circumstance. Rather, they stand for the general proposition, as argued by respondents here, that where a party effectively conducts himself or herself in an action as a self-represented litigant without the professional and ethical considerations that constrain counsel, the party's nominal engagement of an attorney will not insulate him or her from the statutory consequences of the vexatious litigant provisions. And neither case limits its reach to the factual circumstance in which the party had already been determined to be a vexatious litigant in a prior action.

Accordingly, that Elsie Golin was represented by counsel of record throughout the litigation is no bar to the court determining that she is nevertheless a vexatious litigant under section 391, subdivision (b)(3) when counsel did not exercise professional controls over the representation, leaving her and Jeffrey Golin to effectively run the case as self-represented litigants. Because the court's conclusion in this regard is supported by substantial evidence in the record, we cannot say that the court abused its discretion in determining Elsie to be a vexatious litigant under section 391, subdivision (b)(3) simply because she was technically—but in some sense only nominally—represented by counsel.

The Golins also contend that they were not demonstrated to have repeatedly filed unmeritorious motions, pleadings, or other papers or to have

---

[27] Respondents do not discuss Attorney Shapiro's representation of Elsie but we note that this lasted roughly just two months in the 20-month lifespan of this case in the trial court.

engaged in tactics that were frivolous or solely intended to cause unnecessary delay under section 391, subdivision (b)(3). We agree that the trial court did not find that the Golins had repeatedly filed motions, pleadings, or other papers that were individually determined to be unmeritorious under the first, disjunctive prong of this subdivision. But the court's comments at the hearing suggest that it reached the conclusion that the Golins were vexatious not because of individual unmeritorious filings but because of their litigation tactics—their regular practice of revisiting issues and the volume of their supplemental and amended filings that cumulatively evidenced a "level of vexatiousness." According to the trial court, together these spoke to an improper motive to "grind down the other side" or to keep them from "being able to move forward" in the litigation. This goes to the third, disjunctive prong of section 391, subdivision (b)(3)—engaging in tactics that are frivolous *or* solely intended to cause unnecessary delay.[28]

Based on our review of the voluminous record in this case, there is substantial evidence from which to imply findings in support of the trial court's ultimate determination about the Golins' litigation tactics. We need only examine one topic—their challenges to every judicial officer assigned to this case in Santa Clara County—to reach this conclusion. This is because the record demonstrates that the Golins' persistent and obsessive use of judicial challenges in this action, both peremptory and for cause and without regard to timeliness or validity, rises to the level of a frivolous litigation tactic that qualifies them as vexatious litigants under section 391, subdivision (b)(3), even though the trial court did not specifically cite this tactic in its ruling.[29]

The Golins contend that because a portion of their challenges resulted in judges' recusals, their conduct in this regard cannot be characterized as frivolous. But in this case alone, their judicial challenges directly resulted in recusals only twice and more often, they did not. That the entire Santa Clara County bench ultimately recused itself was not related to a challenge by the Golins, and their overall lack of success with judicial challenges is therefore not cured by this en masse recusal, which was due solely to defendant Jacqueline Duong being appointed to the Santa Clara County bench.[30]

[28] As noted, the court also later said that it had considered the forged proofs of service to reach its conclusion that the Golins were abusing court processes.

[29] The vexatious litigant statutes do not define "frivolous" but we note that under section 128.5, subdivision (b)(2), this term is defined as "(A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party." In reference to the vexatious litigant statutes, "frivolous" has also been described as a " ' "flagrant abuse of the system," ' " having " 'no reasonable probability of success,' " or lacking " 'reasonable or probable cause or excuse.' " (*Morton v. Wagner, supra,* 156 Cal.App.4th at p. 972.)

[30] While our analysis does not depend on it, our conclusion about the Golins' frivolous use of judicial challenges as a tactic in this case is supported by what appears to be their frequent challenges to judges in other cases that are referenced in this record. They apparently challenged Judge Edwards in the conservatorship proceeding under sections 170.1 and 170.6

Accordingly, there is substantial evidence to support an implied finding that the Golins' use of judicial challenges as a litigation tactic was frivolous and that this practice unreasonably impacted the litigation and other parties involved in it, and placed an unreasonable burden on the court.

Jeffrey Golin's apparent forgeries on the Golins' proofs of service also qualify as substantial evidence of frivolous tactics in that such conduct is a flagrant abuse of the system.

In sum, Jeffrey Golin was acting in propria persona in the litigation and Elsie Golin's legal representation of record does not preclude the same conclusion, in fact, as to her. Moreover, based on their numerous unsuccessful judicial challenges, and the forged proofs of service on their documents, there is substantial evidence in the record to support the conclusion that the Golins are vexatious litigants under section 391, subdivision (b)(3), in that they have engaged in litigation tactics that can be described as frivolous. No more is required under this subdivision, which specifies neither a quantity of actions necessary to fit the bill nor a timeframe within which the actions had to have taken place in order for a party to be designated a vexatious litigant. (*Morton v. Wagner, supra*, 156 Cal.App.4th at p. 971.)

V. *The Trial Court Abused Its Discretion in Concluding That the Moving Parties Had Demonstrated the Unlikelihood of the Golins' Prevailing on the Merits*

As noted, section 391.1 provides that on motion of a defendant, the court may require the posting of security by the plaintiff if it determines, on an evidentiary showing, both that the plaintiff is a vexatious litigant and that there is no reasonable probability that the plaintiff will prevail in the action against the moving defendant. (See also § 391.3.) The burden on the motion is on the moving party and the court is required to weigh the evidence in exercising its discretion to determine whether the plaintiff has no reasonable likelihood of prevailing in the action. (*Moran, supra*, 40 Cal.4th at p. 786.)

Here, the moving parties offered no evidence relating to the merits of the case, relying instead, with little analysis, on the asserted preclusive effect of the court's prior determinations in the conservatorship proceeding and the district court's determinations in its order dismissing the Golins' federal action. And in concluding that there was no reasonable likelihood of the Golins' prevailing in the action, the court said that it had relied on the district court's order.

---

and then twice unsuccessfully challenged Judge Martin in the same proceeding under section 170.6. And they also three times unsuccessfully challenged United States District Court Judge William Alsup's ability to be unbiased and to decide the federal action according to law, conduct that his order determined to be frivolous.

But neither order was demonstrated to compel the conclusion that there is no reasonable probability that the Golins, as a matter of law, are unlikely to prevail on any of their claims in this case. As the Golins contend, such a showing depends not on whether this case constitutes relitigation within the meaning of the vexatious litigant statutes (see, e.g., § 391, subd. (b)(2)) but instead on whether either or both orders already determined all of the issues raised in this action such that the entire action is barred as a matter of law, something that has not been shown and something of which we are not convinced.[31]

The Golins contend that neither prior order had preclusive effect because neither determined, on the merits, the same issues or claims as are raised here. The conservatorship proceeding resolved only whether Nancy should be conserved and if so, who should then be appointed to act as her conservator. It did not purport to decide other issues. The district court, they contend, did not decide anything on the merits but instead dismissed the Golins' case, in which they had sought among other things custody of Nancy, by invoking principles of federal abstention that left them free, as the order expressly stated, to litigate their claims arising under state law in state court. Accordingly, even if the order could be argued to be determinative of some of the Golins' claims made here, the same cannot be said of their state law claims that the order left expressly unresolved and preserved.

Respondents devote just over one page of their brief to the question whether the Golins are unlikely to prevail on the merits of the case. They cite no authority and offer no real analysis to support their bald conclusion that because of the two prior orders, there is no reasonable likelihood that the Golins will prevail against them on any cause of action.

We conclude that on the face of it, neither of the orders (of which we take judicial notice) determined the merits of essential claims raised here by the Golins—their entitlement to damages arising from the alleged illegal search of their property and from their having allegedly been maliciously prosecuted

---

[31] Such a showing might be made in a given case based on principles of res judicata or collateral estoppel. " ' "The doctrine of res judicata gives conclusive effect to a former judgment in subsequent litigation between the same parties involving the same cause of action. A prior judgment for the plaintiff results in a merger and supersedes the new action by a right of action on the judgment. A prior judgment for the defendant on the same cause of action is a complete bar to the new action. [Citation.] Collateral estoppel . . . involves a second action between the same parties on a different cause of action. The first action is not a complete merger or bar, but operates as an estoppel or conclusive adjudication as to such issues in the second action which were actually litigated and determined in the first action. [Citation.]" [Citation.]' [Citation.]" (*Murray v. Alaska Airlines, Inc.* (2010) 50 Cal.4th 860, 866–867 [114 Cal.Rptr.3d 241, 237 P.3d 565].) Respondents did not attempt to show preclusion under either theory by demonstrating that the respective elements of either applied.

in a criminal proceeding. And while the Golins' operative pleading does not differentiate which particular claims are made by which plaintiff against which defendant, none of the defendants offered any evidence going to the merits of any claims or causes of action arising from these general facts. Moreover, though the first amended complaint is far from an example of model pleading, none of the defendants directly challenged it on the vexatious litigant motion for potentially dispositive pleading defects with respect to any allegation or cause of action.

■ As we have stated, on a motion for an order requiring a vexatious litigant to post security, the moving party must make a showing that there is no reasonable likelihood of the plaintiff prevailing in the action against that defendant. This showing is ordinarily made by the weight of the evidence but a lack of merit may also be shown by demonstrating that the plaintiff cannot prevail in the action as a matter of law. The moving parties here failed to do either. And while we are required to imply findings where possible to support the trial court's order, we find no evidentiary or legal basis from which to do so here. In the absence of such a basis, we conclude that the court abused its discretion in determining, based on what was before it, that there was no reasonable likelihood of the Golins' prevailing in the action on any of their claims or causes of action.[32]

■ Before a vexatious litigant can be required to post security, the court must also determine that there is no reasonable probability that the plaintiff will prevail in the action against the moving defendant. Because we conclude that the court abused its discretion in reaching this determination by having done so without legal or evidentiary basis, we will reverse the order of dismissal and the court's order requiring the Golins to post security on which the dismissal was based.

## VI. *Nancy's Claims*

We have concluded that the trial court's dismissal of the entire action must be reversed. This reversal will effectively reinstate all causes of action alleged in the first amended complaint, including those ostensibly brought by Nancy, who was never determined to be a vexatious litigant and whose claims therefore should not have been dismissed through the vexatious litigant statutes. (*Estate of McDill* (1975) 14 Cal.3d 831, 840 [122 Cal.Rptr. 754, 537 P.2d 874] [general reversal encompasses entire judgment where claims are inextricably interwoven]; *Warren v. Merrill* (2006) 143 Cal.App.4th 96, 108 [49 Cal.Rptr.3d 122].) Contrary to respondents' contentions, the first

---

[32] Our decision should not be read to state that the moving parties could not do so, just that they did not.

amended complaint alleges direct claims by Nancy, whether or not the claims are meritorious or viable. Her claims are not indirectly pleaded by or through her parents, the Golins, appearing on her behalf.

But the status of Nancy's claims remains in question as she, a conserved person, lacks the capacity to appear on her own behalf as a party to litigation and must appear instead through a guardian or conservator of the estate or a guardian ad litem appointed by the court in which the action is pending, or a judge thereof. (§ 372, subd. (a).) A guardian ad litem may be appointed in addition to a guardian or conservator appointed under the Probate Code for custody purposes. This is because the role of a guardian ad litem, who is appointed only for purposes of the action, is solely to protect and defend the ward's interest in the suit. (*Williams v. Superior Court* (2007) 147 Cal.App.4th 36, 47 [54 Cal.Rptr.3d 13].) This is a different role from a guardian or conservator appointed for custody or other purposes under the Probate Code. (*D. G. v. Superior Court* (1979) 100 Cal.App.3d 535, 545–546 [161 Cal.Rptr. 117].)

Because Nancy cannot appear on her own behalf, and no guardian ad litem is currently appointed for her, her claims are presently at risk of dismissal. The Golins contend that Elsie remains Nancy's duly appointed guardian ad litem because the orders vacating her appointment are void, having been made by judges other than the ones who appointed her. They cite *Ford v. Superior Court* (1986) 188 Cal.App.3d 737, 741–742 [233 Cal.Rptr. 607] (*Ford*) in support of this proposition. But in *Ford*, a plaintiff filed a complaint seeking to overturn a judgment previously rendered in another action by the same court. The Court of Appeal held that a judgment rendered in one department of the superior court is not subject to interference or restraint by another department of the same court because the power of appellate review is vested in our Courts of Appeal and the Supreme Court by virtue of the California Constitution. (*Ibid.*) And when a matter is assigned for hearing and determination to one department of a superior court, it is beyond the power of another department of the same court to interfere with that jurisdiction. (*Ibid.*)

The circumstances in *Ford* are a far cry from those here concerning Elsie's appointment as Nancy's guardian ad litem and the vacation of those orders. Whether in Sacramento County or Santa Clara County, at the time of the ex parte orders appointing Elsie, the case was not assigned to a particular department for hearing and determination. Moreover, the appointment of a guardian ad litem is subject to ongoing court supervision and the removal of

a guardian ad litem, who functions partly as an officer of the court, is a matter within the court's control to be exercised as part of its inherent powers. (*Estate of Hathaway* (1896) 111 Cal. 270, 271 [43 P. 754]; *Sarracino v. Superior Court* (1974) 13 Cal.3d 1, 13 [118 Cal.Rptr. 21, 529 P.2d 53]; *In re Marriage of Caballero* (1994) 27 Cal.App.4th 1139, 1148–1149 [33 Cal.Rptr.2d 46].) The role of the guardian ad litem is to protect the incompetent person's rights in the action, to control the litigation, to compromise or settle, to direct the procedural steps, and make stipulations. (*In re Charles T.* (2002) 102 Cal.App.4th 869, 875–876 [125 Cal.Rptr.2d 868].) The guardian ad litem's powers are thus subject to both the fiduciary duties owed to the incompetent person and the requirement that court approval be obtained for certain acts. (*J.W. v. Superior Court* (1993) 17 Cal.App.4th 958, 965 [22 Cal.Rptr.2d 527].) "Like any other officer of the court (receiver, conservator, referee, etc.), a guardian ad litem is subject to court supervision. Should a guardian ad litem take an action inimical to the legitimate interests of the [incompetent person], the court retains the supervisory authority to rescind or modify the action taken." (*Regency Health Services, Inc. v. Superior Court* (1998) 64 Cal.App.4th 1496, 1502 [76 Cal.Rptr.2d 95].) Thus the role of the guardian ad litem and his or her ongoing relationship to the court distinguishes the order appointing him or her from an order or judgment in a case determining or disposing of a disputed matter or a party's rights, as in *Ford*.

Moreover, a valid order made ex parte may be vacated for cause based on a showing that there was mistake, inadvertence, or fraud in the making of the original order. (*Church of Scientology v. Armstrong* (1991) 232 Cal.App.3d 1060, 1069 [283 Cal.Rptr. 917]; *Sheldon v. Superior Court* (1941) 42 Cal.App.2d 406, 408 [108 P.2d 945].) And a successor judge may review an interlocutory ruling of another judge when the facts have changed or when the judge has considered further evidence and law. (*People v. Riva* (2003) 2 Cal.App.4th 981, 992–993 [5 Cal.Rptr.3d 649]; *Tilem v. City of Los Angeles* (1983) 142 Cal.App.3d 694, 706 [191 Cal.Rptr. 229].) From what we can tell from the record, either of these circumstances may have been invoked when two judges other than those who had appointed Elsie as Nancy's guardian ad litem vacated those prior orders.

As noted, while the entire action will be reinstated by virtue of our reversal of the dismissal, Nancy Golin, as a conservatee, cannot pursue claims or causes of action on her own behalf and she can only do so either through her conservator or a duly appointed guardian ad litem.

## DISPOSITION

The order of dismissal is reversed.[33]

Rushing, P. J., and McAdams, J., concurred.

A petition for a rehearing was denied December 23, 2010, and the opinion was modified to read as printed above.

---

[33] We decline to transfer the action to another county as requested by the Golins. We accordingly deny the Golins' motion for judicial notice of documents relating to the assigned judges program as relevant to their request. We leave such a request to the trial court to determine in the first instance on proper motion for relief.