**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TIMOTHY S. DAUBERT,
        *Plaintiff-Appellant*,

v.

LINDSAY UNIFIED SCHOOL DISTRICT,
        *Defendant-Appellee*.

No. 12-16252

D.C. No.
1:09-cv-01463-
GSA

OPINION

Appeal from the United States District Court
for the Eastern District of California
Gary S. Austin, Magistrate Judge, Presiding

Argued and Submitted
May 15, 2014—San Francisco, California

Filed July 25, 2014

Before: M. Margaret McKeown and Milan D. Smith, Jr.,
Circuit Judges, and Susan R. Bolton, District Judge.*

Opinion by Judge Milan D. Smith, Jr.

---

* The Honorable Susan R. Bolton, United States District Judge for the District of Arizona, sitting by designation.

## SUMMARY[**]

### Americans with Disabilities Act

Affirming the district court's grant of summary judgment to the Lindsay Unified School District, the panel held that Title II of the Americans with Disabilities Act does not require a public entity to structurally alter public seating at a high school football field, where the seating was constructed prior to the ADA's enactment, and the school district provides program access to individuals who use wheelchairs.

## COUNSEL

Russell Handy (argued), Center for Disability Access, San Diego, California, for Plaintiff-Appellant.

Michael J. Maurer (argued), McCormick Kabot Jenner & Lew, Visalia, California, for Defendant-Appellee.

## OPINION

M. SMITH, Circuit Judge:

In this appeal, we consider whether Title II of the Americans with Disabilities Act, 42 U.S.C. §§ 12131–12165 (ADA), requires a public entity to structurally alter public

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

seating at a high school football field, where the seating was constructed prior to the ADA's enactment, and the school district provides program access to individuals who use wheelchairs. We conclude that Title II imposes no such burden, and we therefore affirm the district court's grant of summary judgment to Defendant-Appellee Lindsay Unified School District (School District).

## FACTUAL AND PROCEDURAL BACKGROUND

Lindsay, California is a small town located in the Visalia-Porterville Metropolitan area. The town has a total area of 2.6 miles and a population of under 12,000. Approximately 1,100 students attend Lindsay High School.

Lindsay High School has a football field that is typical of those found at many small high schools. It consists of a turf field surrounded by a chain link fence. Beyond the fence lies a single set of metal bleachers on the south side of the field. The bleachers are small, spanning from one thirty-yard line to the other, and they are surrounded by pavement on all sides. The field does not offer any other public seating.

The bleachers at the Lindsay High School football field were constructed in 1971, and have never been reconstructed or altered. The bleachers are not wheelchair accessible. They are only accessible by stairs, and there is no clear floor space within the bleachers where a wheelchair may rest.

While the south-side bleachers are not wheelchair accessible, the School District designates three specific locations from which persons who use wheelchairs are able

to watch football games.[1] The School District also permits spectators who use wheelchairs to sit on the north and south sides of the field, on the paved area, at any point along the fence.

Spectators who use wheelchairs regularly attend Lindsay High School football games. According to both parties, such spectators are able to attend games with companions, and enjoy unobstructed views from the following locations: (1) in front of the south-side bleachers between the thirty and forty-yard lines; (2) the southwest corner of the field, and (3) the end zone on the east side of the field. The parties also agree that the end zone on the east side of the field is near a concession stand, and that spectators tend to congregate in this area to watch games.

Plaintiff-Appellant Timothy Daubert is disabled, and uses a wheelchair for mobility. Daubert periodically attended football games at the Lindsay High School football field between 1997 and 2005. Daubert contends that he "could not fully enjoy" the games because he "had an inferior view of the field and had to deal with either looking through a gate, or folks periodically walking in front of [him], or players and coaches standing on the sidelines obscuring [his] view of the play." The School District has not altered its wheelchair-accessible seating since Daubert last attended a football

---

[1] The School District specifically designates the following locations for persons who use wheelchairs to watch football games: "(1) behind either endzone [sic] on either the grass or the pave[ment]; (2) near the corner of the field, in any corner; [and] (3) along the [north or south] sideline, near the fence separating the turf and the pave[ment], at approximately either [twenty-five-]yard line."

game, and Daubert does not currently attend football games at the Lindsay High School football field for this reason.

Despite Daubert's allegations, he concedes that he has not taken advantage of the wheelchair-accessible seating areas from which other spectators using wheelchairs enjoy unobstructed views. Nonetheless, Daubert argues that these wheelchair-accessible areas are "not satisfactory," because: (1) "[they do not] compare[] in quality and convenience [to] the elevated stadium-style seating," and (2) Daubert would like to sit with other fans.

On August 20, 2009, Daubert initiated this action in the United States District Court for the Eastern District of California, alleging that the School District is in violation of Title II of the ADA because the bleachers at the Lindsay High School football field are not wheelchair accessible. Following discovery, the district court granted summary judgment to the School District. In so doing, the district court held that: (1) because the bleachers were constructed in 1971, they constitute an existing facility under the ADA, and therefore the School District need not provide wheelchair access to the bleachers so long as it provides access to "programs and services" at the football field; and (2) the School District provides Daubert with program access to football games. Daubert timely appealed.

**JURISDICTION AND STANDARD OF REVIEW**

We have jurisdiction under 28 U.S.C. § 1291. We review a district court's decision to grant summary judgment de novo. *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007).

## DISCUSSION

### I.  Legal Standard

The ADA, signed into law on July 26, 1990, aims "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The ADA includes three separate titles relating to discrimination. Title II regulates state and local governments operating public services or programs.

Under Title II of the ADA, a "qualified individual with a disability" cannot, "by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id*. § 12132.

To make out a prima facie case under Title II of the ADA, a plaintiff must show that: "(1) [he] is an individual with a disability; (2) [he] is otherwise qualified to participate in or receive the benefit of a public entity's services, programs, or activities; (3) [he] was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of [his] disability." *Sheehan v. City & Cnty. of S.F.*, 743 F.3d 1211, 1232 (9th Cir. 2014). An individual is excluded from participation in or denied the benefits of a public program if "a public entity's facilities are inaccessible to or unusable by individuals with disabilities." 28 C.F.R. § 35.149.

In defining accessibility, Title II's implementing regulations distinguish between newly constructed or altered facilities, which are covered by 28 C.F.R. § 35.151, and existing facilities, which are covered by 28 C.F.R. § 35.150.

## A. New Construction and Alterations

Section 35.151(a)(1) provides: "Each facility or part of a facility constructed by, on behalf of, or for the use of a public entity shall be designed and constructed in such manner that the facility or part of the facility is readily accessible to and usable by individuals with disabilities, *if the construction was commenced after January 26, 1992*." 28 C.F.R. § 35.151(a)(1) (emphasis added). To be "readily accessible," any part of a newly constructed or altered facility must be constructed in conformance with the Americans with Disabilities Act Accessibility Guidelines for Buildings and Facilities (ADAAG), 28 C.F.R. Pt. 36, App. A, or with the Uniform Federal Accessibility Standards (UFAS), 41 C.F.R. Pt. 101–19.6, App. A. *See* 28 C.F.R. § 35.151 (c)(1)–(3).[2] The ADAAG is a comprehensive set of structural guidelines that articulates detailed design requirements to accommodate persons with disabilities. *See* 28 C.F.R. Pt. 36, App. A. Among other requirements, the ADAAG mandates that

---

[2] "If physical construction or alterations commence[d] after July 26, 1992, but prior to September 15, 2010, then new construction and alterations . . . must comply with either UFAS or the 1991 [ADAAG] . . . . If physical construction or alterations commence[d] on or after September 15, 2010 and before March 15, 2012, then new construction and alterations . . . may comply with . . . [t]he 2010 [ADAAG], UFAS, or the 1991 [ADAAG] . . . . If physical construction or alterations commence[d] on or after March 15, 2012, then new construction and alterations . . . shall comply with the 2010 [ADAAG]." 28 C.F.R. § 35.151 (c)(1)–(3).

wheelchair seating be included as "an integral part of any fixed seating plan." 28 C.F.R. Pt. 36, App. B.

## B.  Existing Facilities

In contrast to newly constructed or altered facilities, a public entity's *existing facilities*—those facilities constructed prior to January 26, 1992— need not be "accessible to and usable by individuals with disabilities." 28 C.F.R. § 35.150(a)(1). Rather, with respect to existing facilities, a public entity need only provide program access, by "operat[ing] each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities." *Id*. § 35.150(a).

The applicable regulations provide a number of methods through which a public entity may achieve program access, including "any . . . methods that result in making its services, programs, or activities readily accessible to and usable by individuals with disabilities." *Id*. § 35.150(b)(1). "In choosing among available methods for [achieving program access], a public entity shall give priority to those methods that offer services, programs, and activities to qualified individuals with disabilities in the most integrated setting appropriate." *Id*.

"Title II's emphasis on 'program accessibility' rather than 'facilities accessibility' was intended to ensure broad access to public services, while, at the same time, providing public entities with the flexibility to choose how best to make access available." *Parker v. Universidad de Puerto Rico*, 225 F.3d 1, 6 (1st Cir. 2000). For this reason, the regulations emphasize that "[a] public entity is not required to make structural changes in existing facilities where other methods

are effective in achieving compliance." 28 C.F.R. § 35.150(b)(1). The Supreme Court has further instructed that, "[i]n the case of older facilities, for which structural change is likely to be more difficult, a public entity may comply with Title II by adopting a variety of less costly measures . . . [and] [o]nly if these measures are ineffective in achieving accessibility is the public entity required to make reasonable structural changes." *Tennessee v. Lane*, 541 U.S. 509, 532 (2004).

## II.  Daubert's Claim

Daubert argues that the School District excludes him from a "public program," because (1) the bleachers at the Lindsay High School football field are not accessible to individuals who use wheelchairs; and (2) the seating that is available to individuals who use wheelchairs is not ADAAG compliant. These arguments misconstrue the regulatory scheme, and therefore fail to establish that the School District excludes Daubert in violation of Title II.

### A.  Bleacher Accessibility

It is undisputed that the bleachers at the Lindsay High School football field are not wheelchair accessible. However, because the bleachers were constructed in 1971, they are an existing facility under the applicable regulations. 28 C.F.R. § 35.150. Accordingly, the fact that the bleachers are not accessible does not amount to exclusion under Title II so long as the School District provides program access to programs at the football field—in this case, football games. *See id*. § 35.150(a).

Daubert argues that, under the facts of this case, program access not only requires access to football games, but also includes access to the south-side bleachers. According to Daubert, the "social experience" of sitting in the bleachers with other Lindsay High School fans constitutes a distinct public program, to which he has a right of access. We disagree.

As discussed above, Title II's implementing regulations clearly distinguish facilities from programs. Under section 35.150, a public entity need not make each of its existing facilities "accessible to and usable by individuals with disabilities." *Id*. § 35.150(a)(1); *see also id.* § 35.150(b)(1) ("A public entity is not required to make structural changes in existing *facilities* . . . ." (emphasis added)). A public entity must, however, "operate each . . . *program* . . . [so that it] is readily accessible to and usable by individuals with disabilities." *Id*. § 35.150(a) (emphasis added).

We have explained that whether a public function constitutes a public program under Title II turns "not so much on whether a particular public function can technically be characterized as a service, program, or activity, but [on] whether it is a normal function of a governmental entity." *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) (internal citations and quotation marks omitted). A normal function of a government entity is "anything a public entity *does*," such as maintaining city sidewalks, zoning, and issuing certain licenses. *Id*. (emphasis added). But those experiences that are merely incidental to normal government functions are not fairly characterized as government programs under 28 C.F.R. § 35.150.

Here, the School District offers football games as a public program, and the bleachers are one part of the facility in which that program takes place. While sitting in the south-side bleachers may offer a particular social experience, this experience is merely incidental to the program the government offers (i.e., football games), and providing this experience is not fairly characterized as "a normal function of a government entity." *Id*.[3]

Moreover, "a court must construe regulations so as to give effect to each provision," and Daubert's argument that the bleachers are a public program would render the program access standard meaningless. *Ctr. for Biological Diversity v. Salazar*, 706 F.3d 1085, 1094 (9th Cir. 2013) (citing *Boeing Co. v. United States*, 258 F.3d 958, 967 (9th Cir. 2001)). Title II's regulations clearly distinguish between newly constructed or altered facilities, which must be made readily accessible to individuals with disabilities, 28 C.F.R. § 35.151, and existing facilities, which need only provide program access, 28 C.F.R. § 35.150. If program access required public entities to structurally alter existing facilities whenever the existing public seating is not readily accessible to individuals with disabilities, section 35.150's separate provisions for existing facilities would serve no purpose.

For these reasons, we reject Daubert's contention that the relevant "program" is the south-side bleachers, and we

---

[3] Although it is unpublished, the Fifth Circuit reached the same conclusion in a well-reasoned opinion in *Greer v. Richardson Independent School District*, 472 Fed. Appx. 287, 293 (5th Cir. 2012). In so doing, the Fifth Circuit held that program access does not require "that a disabled individual . . . be able to . . . experience [a high school football] game from the general admission public bleachers . . . ." *Id*.

conclude that the School District complies with Title II, so long as it provides program access to its football games.

## B.  Program Access to Football Games

Daubert next claims that the School District fails to provide him with program access to football games because the seating that is available to individuals who use wheelchairs does not comply with the ADAAG's design and integration requirements. This argument rests on a misunderstanding of the governing regulations, and we reject it.

As discussed above, only facilities that were constructed or altered after January 26, 1992 are subject to the ADAAG's requirements. 28 C.F.R. § 35.151(a)(1). With respect to facilities that were constructed prior to this date, a public entity need only "operate each . . . program [at that facility] . . . [so that it] is readily accessible to and usable by individuals with disabilities." *Id.* § 35.150(a). Like the ADAAG, section 35.150 prioritizes integration, but it does not require existing facilities to undergo structural changes to achieve integration. *Id.* § 35.150(b)(1); *see also Lane*, 541 U.S. at 532.

Football games at the Lindsay High School football stadium are "readily accessible" to individuals who use wheelchairs. *See* 28 C.F.R. § 35.150(a). The School District offers many different locations from which spectators who use wheelchairs are able to view football games, and it is undisputed that such spectators enjoy unobstructed views from at least three of these locations.

Moreover, the current seating is appropriately integrated under the circumstances. *See id.* § 35.150(b)(1). Spectators who use wheelchairs may sit with companions and are able to sit directly in front of the bleachers, to each side of the bleachers, and in other areas where spectators congregate. In light of the structure of the facility, any further measures to provide integrated wheelchair seating would require the School District to undertake structural alterations of the bleachers. Because we conclude that the School District provides Daubert with program access to Lindsay High School football games under 28 C.F.R. § 35.150, and because the School District is not required to comply with the ADAAG, the School District is not required to make such structural alterations.

## CONCLUSION

For the reasons stated, Daubert has not established that the School District excludes him from a public program, and he therefore fails to make out a prima facie case of discrimination under Title II of the ADA. Accordingly, we affirm the judgment of the district court.

**AFFIRMED.**