Filed 4/14/26  T-Alexander v. Baass CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| MICHAEL T-ALEXANDER, | H052046 |
| Plaintiff and Appellant, | (Santa Cruz County Super. Ct. No. 23CV01552) |
| v. | |
| MICHELLE BAASS et al., | |
| Defendants and Respondents. | |

Michael T-Alexander challenges an order declaring him a vexatious litigant pursuant to Code of Civil Procedure section 391.1[1] and imposing a prefiling order on him pursuant to section 391.7.  T-Alexander argues that California's vexatious litigant statutes violate the supremacy clause of the United States Constitution and are preempted by federal law governing disability rights.  He further argues that improper conduct by the trial court denied him due process and necessitates reversal.

We reject the arguments and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Underlying petition

On July 3, 2023, T-Alexander[2] filed a petition for a writ mandate and complaint for declaratory and injunctive relief (petition) against Michelle Baass and Kim Johnson

---

[1] Subsequent undesignated statutory references are to the Code of Civil Procedure.

[2] Appellant alternately refers to himself as "T-Alexander," "T. Alexander," or "Alexander." We will refer to him as "T-Alexander," which matches the name listed on the operative petition and complaint and the notice of appeal in this action.

(respondents), in their respective capacities as the directors of the Department of Health Care Services (DHCS) and the Department of Social Services (CDSS).[3]  The petition alleges that T-Alexander is a Medi-Cal beneficiary who is permanently disabled.  After moving from San Mateo County to Santa Cruz County, T-Alexander allegedly requested in January 2022 that his benefits be transferred to Santa Cruz County, pursuant to Welfare and Institutions Code section 10003.  However, he alleges, after he made that request, the Santa Cruz County CDSS "used a defective process and policy that had been outdated and expired by two years and replaced by [Welfare and Institutions Code section 10003], the 'inter-county transfer (ICT) process.' "  According to T-Alexander, by improperly shifting the transfer-of-benefits process back to the Social Security Administration, the Santa Cruz CDSS violated federal and state law and his due process rights.

The petition further alleges that respondents refused to enroll him in the required managed care plan, unenrolled him from the San Mateo County managed care plan without notice, and denied his request for a hearing.

### B.  Motion to declare T-Alexander a vexatious litigant

On September 7, 2023, respondents filed a motion to declare T-Alexander a vexatious litigant pursuant to section 391, and later an amended motion on November 16, 2023.  They argued first that T-Alexander is a vexatious litigant pursuant to section 391, subdivision (b)(1), which defines a vexatious litigant as any person who, "[i]n the immediately preceding seven-year period has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been (i) finally determined adversely to the person or (ii) unjustifiably permitted to remain

---

[3] We refer to this lawsuit as the "2023 lawsuit" because, as explained below, T-Alexander had previously filed a related lawsuit in 2022 against the same respondents in the same court, which remained pending at the time he filed the 2023 lawsuit.

2

pending at least two years without having been brought to trial or hearing." (§ 391, subd. (b)(1).)

Respondents requested that the trial court take judicial notice of five judgments and orders of dismissal in cases that had been determined adversely to T-Alexander in the previous seven years: (1) *Alexander v. Cal. Dept. of Motor Vehicles* (N.D. Cal., No. 19-cv-03996), in which a civil complaint was dismissed with prejudice; (2) *Alexander v. Cal. Dept. of Motor Vehicles* (9th Cir., No. 20-15252), in which the appeal was dismissed as frivolous; (3) *Alexander v. County of San Mateo et al.* (N.D. Cal., No. 20-cv-05179), in which the court denied T-Alexander injunctive relief and dismissed the matter with prejudice; (4) *Michael Alexander v. County of San Mateo et al.* (9th Cir., No. 20-16861), in which T-Alexander's appeal was dismissed for lack of jurisdiction; and (5) *Michael Alexander v. County of San Mateo et al.*, (9th Cir., No. 20-17189), in which T-Alexander's claims were dismissed on the basis his appeal was frivolous, and judgment was entered against him.

Respondents also argued that T-Alexander is a vexatious litigant pursuant to section 391, subdivision (b)(3), which defines it as any person who, "[i]n any litigation while acting in propria persona, repeatedly files unmeritorious motions, pleadings, or other papers, conducts unnecessary discovery, or engages in other tactics that are frivolous or solely intended to cause unnecessary delay." (§ 391, subd. (b)(3).) Respondents then listed nine distinct motions, pleadings, or papers that T-Alexander had filed in the 2023 lawsuit, and in a related lawsuit already pending in the same court—*T. Alexander v. Michelle Baass, et. al.*, Case No. 22cv00899 (2022 lawsuit).

As respondents noted in their motion, T-Alexander had filed a notice of related case when he filed the petition in the 2023 lawsuit, which asserted that the pending 2022 lawsuit involved the same parties, was based on the same or similar claims, and arose

from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact.

Accordingly, respondents requested an order requiring T-Alexander to seek leave of court before proceeding in propria persona with a lawsuit in any California court, pursuant to section 391.7, subdivision (a).  That section provides:  "In addition to any other relief provided in this title, the court may, on its own motion or the motion of any party, enter a prefiling order which prohibits a vexatious litigant from filing any new litigation in the courts of this state in propria persona without first obtaining leave of the presiding justice or presiding judge of the court where the litigation is proposed to be filed. Disobedience of the order by a vexatious litigant may be punished as a contempt of court."  (§ 391.7, subd. (a).)

In addition, respondents requested an order requiring T-Alexander to post security sufficient to cover respondents' anticipated attorney fees and costs before T-Alexander may proceed further in the 2023 lawsuit, pursuant to section 391.1 subdivision (a), which provides:  "In any litigation pending in any court of this state, at any time until final judgment is entered, a defendant may move the court, upon notice and hearing, for an order requiring the plaintiff to furnish security or for an order dismissing the litigation pursuant to subdivision (b) of Section 391.3. The motion for an order requiring the plaintiff to furnish security shall be based upon the ground, and supported by a showing, that the plaintiff is a vexatious litigant and that there is not a reasonable probability that they will prevail in the litigation against the moving defendant."  (§ 391.1, subd. (a).)

In support of that request, respondents argued that there was no reasonable probability that T-Alexander could prevail in the 2023 lawsuit because the claims are duplicative of those raised in the 2022 lawsuit.  As a result, respondents argued, the 2023

4

lawsuit is subject to special demurrer pursuant to section 430.10, subdivision (c), because another action is pending which involves the same parties and the same cause of action.

After respondents filed their motion, T-Alexander initially filed a pleading labeled "dismissal of case" on January 22, 2024, in which he asked the court to "[p]lease dismiss this case." However, he then filed an opposition to respondents' amended motion on January 29, 2024. T-Alexander argued that the prior lawsuits did not satisfy application of section 391, subdivision (b)(1), because they were not final adverse determinations on the merits, but rather were dismissed on procedural grounds, were appeals of the underlying cases that did not count as separate proceedings, or were still pending.

He also argued that the definition in section 391, subdivision (b)(3), was not satisfied because the cited motions and pleadings he had filed were legitimate and raised valid arguments.

Finally, he argued that, because "identical claims" remained pending in the 2022 lawsuit, there was a reasonable probability he could succeed on the merits, and an order requiring the posting of security was not warranted pursuant to section 391.1.

### C. Hearing and order

A hearing was held on March 14, 2024.[4] T-Alexander failed to properly contest the trial court's tentative ruling as required by the local rules, but nevertheless appeared remotely at the hearing and sought to argue against the ruling. The trial court initially allowed T-Alexander to present oral argument, but then stopped him when he began addressing the merits of the underlying petition, rather than the subject motion.

The trial court issued its order granting respondents' motion on March 25, 2024 (order). The court first stated that T-Alexander's "proposed dismissal"—which it

---

[4] The hearing was not transcribed by a court reporter. T-Alexander elected to designate a settled statement on appeal, which the trial court ultimately prepared and certified on December 10, 2024.

5

described as an apparent attempt to avoid respondents' motion—had been rejected for failing to use the appropriate form.

Next, the court determined T-Alexander to be a vexatious litigant pursuant to section 391, subdivision (b)(1). The court based that ruling on eight distinct actions T-Alexander had filed in propria persona in the previous seven years which had been adversely decided against him.

The court then held that there was not a reasonable probability T-Alexander would succeed in the 2023 lawsuit because it was "duplicative and based upon the same facts and incident as in [the 2022 lawsuit], which is pending." The trial court therefore required T-Alexander to post a $20,000 security within 30 days to prevent dismissal of the 2023 lawsuit, pursuant to sections 391.1 and 391.3.

Finally, the order stated that the court would issue a prefiling order pursuant to section 391.7, thereby preventing T-Alexander from filing new litigation in any California court without first obtaining leave from the presiding judge where the proposed litigation would be filed, unless represented by an attorney.

The following month, on April 18, 2024, the trial court filed the prefiling order declaring T-Alexander a vexatious litigant pursuant to section 391.7 (prefiling order). Pursuant to section 391.7, subdivision (f), the prefiling order also directed the clerk of the court to provide a copy of the order to the Judicial Council, which maintains a record of vexatious litigants subject to prefiling orders and annually disseminates a list of those persons to the clerks of California courts. (§ 391.7, subd. (f).)

### D. Appeal

T-Alexander timely appealed. This court subsequently granted T-Alexander's motion for permission to file this appeal pursuant to section 391.7, subdivision (c).

## II. DISCUSSION

T-Alexander presents numerous arguments on appeal, chiefly contending that section 391 violates the supremacy clause of the United States Constitution, and is

6

preempted by federal law regarding disability rights, such as the Rehabilitation Act of 1973 (Rehabilitation Act) and the Americans with Disabilities Act (ADA). As we explain below, many of his contentions are unsupported by reasoned argument and citations to authority, or they otherwise challenge non-appealable aspects of the trial court's order.

### A. *Appealability*

Respondents first argue that the appeal should be dismissed for lack of jurisdiction because T-Alexander appeals from an interlocutory vexatious litigant order, which is not directly appealable, and the trial court proceedings remain pending. ~(RB 16-17)~

Respondents cite *Golin v. Allenby* (2010) 190 Cal.App.4th 616 (*Golin*) which held that an "order determining a party to be a vexatious litigant and requiring the posting of security under [Code of Civil Procedure] section 391.3 is not directly appealable." (*Id*. at p. 635.) Only after a plaintiff fails to furnish the security and the matter is subsequently dismissed pursuant to section 391.4 will an appeal lie. (*Ibid*.)

There is no evidence in the record here that any subsequent order or judgment of dismissal was entered. For that reason, the trial court's order requiring the posting of security is not directly appealable by itself. (*Golin, supra*, 190 Cal.App.4th at p. 636.)

However, the court's order was not limited to the security requirement pursuant to section 391.3—instead, the court also stated that it would enter a prefiling order pursuant to section 391.7, which it then did on April 18, 2024.

A prefiling order pursuant to section 391.7 is essentially an injunction—"it is, literally, an order requiring [the litigant] to refrain from doing a particular act—filing any new litigation [in propria persona] without certain permission." (*Luckett v. Panos* (2008) 161 Cal.App.4th 77, 90 ["there is no question that the prefiling order contemplated by section 391.7, subdivision (a) *is* an injunction"].) Because an order granting an injunction is appealable pursuant to Code of Civil Procedure section 904.1, subdivision

7

(a)(6), the prefiling order here is appealable. (*In re Marriage of Rifkin & Carty* (2015) 234 Cal.App.4th 1339, 1347 (*Rifkin*).)

T-Alexander filed his initial notice of appeal on April 17, 2024, the day before the trial court entered the prefiling order. In addition, neither that notice of appeal, nor his subsequent amended notice of appeal filed on May 16, 2024, identified the prefiling order as the order being appealed from—instead, the amended notice of appeal identified the trial court's March 25, 2024, order. Nevertheless, we will construe T-Alexander's initial notice of appeal as a premature notice of appeal of the prefiling order, which we will treat as filed immediately after entry of the prefiling order. (Cal. Rules of Court, rule 8.104(d)(1), (e) ["notice of appeal filed after judgment [or order] is rendered but before it is entered is valid and is treated as filed immediately after entry of judgment [or order]"]; *Bosetti v. United States Life Insurance Company in City of New York* (2009) 175 Cal.App.4th 1208, 1223, fn. 11; see also rule 8.100(a)(2) ["The notice of appeal must be liberally construed."]; *Verceles v. Los Angeles Unified School District* (2021) 63 Cal.App.5th 776, 783 [" '[N]otices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced.' "]

### B. Applicable law

#### 1. Vexatious litigant statutes

California's vexatious litigant statutes (§§ 391–391.7) "are designed to curb misuse of the court system by those persistent and obsessive litigants who, repeatedly litigating the same issues through groundless actions, waste the time and resources of the court system and other litigants." (*Shalant v. Girardi* (2011) 51 Cal.4th 1164, 1169 (*Shalant*).)

These statutes provide two distinct, but complementary, sets of remedies. (*Shalant, supra,* 51 Cal.4th at p. 1171.) First, sections 391.1 through 391.6 provide that, in pending litigation, "a defendant may have the plaintiff declared a vexatious litigant

8

and, if the plaintiff has no reasonable probability of prevailing, ordered to furnish security." (*Ibid.*; §§ 391.1–391.6.)  Then, "if the plaintiff fails to furnish the security, the action will be dismissed." (*Shalant, supra*, at p. 1171.)

Second, a defendant may prevent a vexatious litigant "from filing any *new* litigation in propria persona by obtaining a prefiling order and, if any new litigation is inadvertently permitted to be filed in propria persona without the presiding judge's permission, may then obtain its dismissal." (*Shalant, supra*, 51 Cal.4th at p. 1171; § 391.7.)  Section 391.7, added by the Legislature in 1990 to provide an additional means to counter misuse of the system by vexatious litigants, " 'operates beyond the pending case' and authorizes a court to enter a 'prefiling order' that prohibits a vexatious litigant from filing any new litigation in propria persona without first obtaining permission from the presiding judge." (*Shalant, supra,* at p. 1171, citation omitted.)

The prefiling requirement in section 391.7 does not deny a vexatious litigant access to the courts, but rather " 'operates solely to preclude the initiation of meritless lawsuits and their attendant expenditures of time and costs.' " (*In re Marriage of Deal* (2022) 80 Cal.App.5th 71, 77.)

### 2. *Rehabilitation Act and ADA*

The Rehabilitation Act of 1973 (29 U.S.C. § 701 *et seq.*), was the " 'first major federal statute designed to protect the rights of ... the [disabled] people of this country.' " (*Fleming v. Yuma Regional Medical Center* (9th Cir. 2009) 587 F.3d 938, 940 (*Fleming*), quoting *Smith v. Barton* (9th Cir. 1990) 914 F.2d 1330, 1338.)  Section 504 of the Rehabilitation Act (section 504) "creates a private right of action for individuals subjected to disability discrimination by any program or activity receiving federal financial assistance [citation] including employment discrimination in such programs [citations]." (*Fleming, supra*, at p. 940 ["[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the

9

participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance"].)

The ADA, enacted in 1990, "aims 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.' " (*Daubert v. Lindsay Unified School District* (9th Cir. 2014) 760 F.3d 982, 985, quoting 42 U.S.C. § 12101(b)(1).) "The ADA contains five titles separately addressing employment, public entities, public accommodations, telecommunications, and miscellaneous matters." (*Stanley v. City of Sanford, Florida* (2025) 606 U.S. 46, 51.)

### C. Principles of appellate review and standard of review

A fundamental principle of appellate review is that we presume a trial court's judgment is correct and the burden is on the appellant to demonstrate that the court committed an error that justifies reversal of the judgment. (*L.O. v. Kilrain* (2023) 96 Cal.App.5th 616, 620 (*Kilrain*).) The appellant must support each claim of error with meaningful analysis and citation to legal authority. (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948.) An appellant's failure either to raise a point or support it with reasoned argument and citations to authority allows the reviewing court to deem the unsupported contentions forfeited. (*Ibid.*; *Kilrain, supra*, at p. 620.)

We review a trial court's determination that an individual is a vexatious litigant for substantial evidence. (*Rifkin, supra,* 234 Cal.App.4th at p. 1346, citing *Holcomb v. U.S. Bank National Association* (2005) 129 Cal.App.4th 1494, 1498–1499.) "Review of the order is accordingly limited and the Court of Appeal will uphold the ruling if it is supported by substantial evidence. Because the trial court is best suited to receive evidence and hold hearings on the question of a party's vexatiousness, we presume the order declaring a litigant vexatious is correct and imply findings necessary to support the judgment." (*Golin, supra,* 190 Cal.App.4th at p. 636.)

By contrast, we exercise de novo review of the constitutionality of statutes and whether they are preempted by federal law. (*Persky v. Bushey* (2018) 21 Cal.App.5th

10

810, 817–818; *People ex rel. Renne v. Servantes* (2001) 86 Cal.App.4th 1081, 1087.) " ' "[A]ll presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears." ' " (*Voters for Responsible Retirement v. Board of Supervisors* (1994) 8 Cal.4th 765, 780, citations omitted.)

### D. Analysis

#### 1. Supremacy clause and preemption

T-Alexander first argues that the supremacy clause of the United States Constitution precludes using section 391 to "convert federally protected ADA disability complaints under 42 USC § 12101 and Section 504 complaints into grounds for restricting state court access." According to T-Alexander, penalizing an individual for exercising his federal rights in that manner "creates precisely the type of procedural obstacle that 'burdens, frustrates and defeats' federal rights…."

We begin with a brief overview of the supremacy clause and the law regarding preemption. As a general matter, " 'in our system of federalism, federal law and state law ordinarily coexist." (*Ranger v. Alamitos Bay Yacht Club* (2025) 17 Cal.5th 532, 547, citing *Ward v. United Airlines, Inc.* (2020) 9 Cal.5th 732, 757 (*Ward*).) When state and federal law overlap, "tensions between them are resolved not by interstate comity and choice of law principles but by the supremacy clause and preemption principles." (*Ward, supra,* at p. 757.)

The supremacy clause of the United States Constitution provides: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary

11

notwithstanding." (U.S. Const. Art. VI, cl. 2.)  As a result, "Congress may consequently pre-empt, *i.e.*, invalidate, a state law through federal legislation. It may do so through express language in a statute. But even where ... a statute does not refer expressly to pre-emption, Congress may implicitly pre-empt a state law, rule, or other state action." (*Oneok, Inc. v. Learjet, Inc.* (2015) 575 U.S. 373, 376–377.)

There are " 'three different types of preemption— "conflict," "express," and "field," [citation]—but all of them work in the same way: Congress enacts a law that imposes restrictions or confers rights on private actors; a state law confers rights or imposes restrictions that conflict with the federal law; and therefore the federal law takes precedence and the state law is preempted.' " (*County of Butte v. Department of Water Resources* (2022) 13 Cal.5th 612, 628, quoting *Murphy v. National Collegiate Athletic Assn.* (2018) 584 U.S. 453.)

Here, T-Alexander broadly argues that section 391 violates the supremacy clause by penalizing "the filing of federal ADA disability complaints under 42 USC § 12101 and Section 504 complaints."  As support, he cites numerous United States Supreme Court cases for the general propositions described above.

However, T-Alexander has failed to analogize any of the cases to the facts at issue here, or otherwise describe how section 391—or any of the vexatious litigant statutes— conflicts with federal disability laws or rights.  Nor do his case references include any pin citations to specific portions of the opinions that purportedly support his assertions.[5]  We consider the arguments forfeited.  (*Handyman Connection of Sacramento, Inc. v. Sands* (2004) 123 Cal.App.4th 867, 880, fn. 14 (*Handyman*) [declining to consider points

---

[5] See, e.g., *McCulloch v. Maryland* (1819) 17 U.S. 316; *Felder v. Casey* (1988) 487 U.S. 131; *Howlett v. Rose* (1990) 496 U.S. 356; *Wisconsin Public Intervenor v. Mortier* (1991) 501 U.S. 597; *Sperry v. Florida ex rel. Florida Bar* (1963) 373 U.S. 379; *Pacific Gas & Electric Co. v. State Energy Resources Conservation & Development Commission* (1983) 461 U.S. 190; *Arizona v. United States* (2012) 567 U.S. 387; *Leslie Miller, Inc. v. Arkansas* (1956) 352 U.S. 187.

supported only by case citations with no pin cites].) " 'It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness.' " (*Kilrain, supra,* 96 Cal.App.5th at p. 620; see also, *In re S.C.* (2006) 138 Cal.App.4th 396, 412 [not court's role to carry out appellate burden to explain how authorities support claim of error]; *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247 [rules apply equally to self-represented parties].)

Similarly, with respect to preemption, T-Alexander merely recites the various types of preemption—conflict, express, and field—but fails to provide any analysis or discussion of how the doctrines might apply here. And he again cites numerous United States Supreme Court cases but provides no discussion or application to the facts here.[6] To the extent T-Alexander has asserted any arguments regarding preemption, we consider them forfeited. (*Handyman, supra,* 123 Cal.App.4th at p. 880, fn. 14.)

T-Alexander also argues that "[t]he imposition of [§ 391] bond requirements on individuals exercising their rights under the ADA (42 USC § 12101) and Section 504 creates an impermissible financial barrier that directly conflicts with federal disability law's guarantee of meaningful access to legal remedies." However, as explained above, the trial court's order requiring the posting of security is not directly appealable here. (*Golin, supra*, 190 Cal.App.4th at p. 636.)

T-Alexander next argues that the use of section 391 to penalize the federally protected act of filing disability complaints constitutes prohibited state interference with federal law, pursuant to *Nash v. Florida Industrial Commission* (1967) 389 U.S. 235

---

[6] See, e.g., *Rice v. Santa Fe Elevator Corporation* (1947) 331 U.S. 218; *Fidelity Federal Savings and Loan Association v. de la Cuesta* (1982) 458 U.S. 141; *Lawrence County v. Lead-Deadwood School District No. 40-1* (1985) 469 U.S. 256; *Metropolitan Life Insurance Co. v. Taylor* (1987) 481 U.S. 58; *Brown v. Hotel and Restaurant Employees and Bartenders International Union Local 54* (1984) 468 U.S. 491; *Hillsborough County, Florida v. Automated Medical Laboratories, Inc.* (1985) 471 U.S. 707; *Boyle v. United Technologies Corporation* (1988) 487 U.S. 500; *Geier v. American Honda Motor Company, Inc.* (2000) 529 U.S. 861.

(*Nash*).  In *Nash*, the United States Supreme Court considered whether a Florida state law that denied unemployment insurance to those who had filed an unfair labor practice charge violated the supremacy clause because it conflicted with the federal National Labor Relations Act (NLRA), "a comprehensive code passed by Congress to regulate labor relations in activities affecting interstate and foreign commerce." (*Nash, supra*, at pp. 235–237.)  Implementation of the NLRA, the Court explained, "is dependent upon the initiative of individual persons who must, as petitioner has done here, invoke its sanctions through filing an unfair labor practice charge," and "Congress has made it clear that it wishes all persons with information about such practices to be completely free from coercion against reporting them to the Board," as shown by section 8(a)(4) of the NLRA, "which makes it an unfair labor practice for an employer to discriminate against an employee because he has filed charges." (*Nash, supra,* at p. 238.)

The Court held that the state law, "like the coercive actions which employers and unions are forbidden to engage in, has a direct tendency to frustrate the purpose of Congress to leave people free to make charges of unfair labor practices to the Board." (*Nash, supra,* 389 U.S. at p. 239.)  Specifically, because Florida had applied its law so that an employee who believes he has been wrongly discharged must either "keep quiet and receive unemployment compensation until he finds a new job," or file an unfair labor practice charge and thereby surrender his right to unemployment compensation, the financial burden imposed by the state law impedes resort to the federal law and "thwart[s] congressional reliance on individual action." (*Ibid*.)

T-Alexander argues the case is directly analogous here because:  (1) filing ADA and section 504 disability complaints are similarly protected federal acts; (2) California uses section 391 to penalize disability rights filings; (3) California similarly forces a choice between exercising federal disability rights through complaints or avoiding state penalties under section 391; (4) section 391's financial burdens and its bar on access to state courts to enforce state and federal disability complaints impede access to ADA and

14

section 504 remedies; and (5) using section 391 to burden federal disability rights "retards, impedes, burdens" federal rights and creates "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

We find the analogy unpersuasive. As a threshold matter, T-Alexander has not identified any specific sections of the Rehabilitation Act or ADA which he claims are impeded here. Instead, he refers only to "section 504" or the "ADA" as a whole. For that reason, we are unable to conduct the kind of analysis the United States Supreme Court undertook in *Nash*, when it determined that Florida's state law thwarted the specific cited sections of the NLRA which made it an unfair labor practice to discriminate against an employee because he had filed charges. (*Nash, supra*, 389 U.S. at p. 238.) Although T-Alexander refers generally to a right to file a federal disability complaint, he does not identify any specific statutory authority immunizing his federal litigation activity from the operation of section 391 et seq.[7]

In any event, California's vexatious litigant statutes do not preclude the filing of federal disability, or other, complaints. Instead, where applicable, they merely require a vexatious litigant plaintiff to (1) furnish security to maintain an action where the plaintiff has no reasonable probability of prevailing, or (2) obtain permission from the presiding judge before filing any new litigation in propria persona. (§§ 391.1–391.7.) T-Alexander has failed to articulate how those statutes thwart congressional intent of any part of the Rehabilitation Act or ADA.

---

[7] Elsewhere in his opening brief, T-Alexander claims that section 391 "impermissibly converts protected federal acts (filing disability complaints) (39 CFR 255.6) into grounds for state penalties." The cited regulation appears to be part of the United States Postal Service regulations implementing section 504, which includes administrative procedures for filing section 504 complaints "alleging disability discrimination in any program or activity of the Postal Service and brought by members of the public." (39 C.F.R. § 255.6(b); *Muhammad v. United States* (D.D.C. 2018) 300 F.Supp.3d 257, 263.) T-Alexander has not articulated how the regulation is applicable or relevant here.

15

Relatedly, T-Alexander argues that the ADA and section 504 create a protected class of litigants for qualified individuals with disabilities, thereby creating a " 'fundamental distinction' between disability rights litigation and the general civil cases [section 391] was designed to regulate." It follows, he contends, that section 391's inclusion of "any civil action or proceeding" within its scope "impermissibly fails to recognize the special status of federal disability rights claims."

However, T-Alexander has again failed to support his contentions with reasoned argument or citations to authority. For instance, he cites generally to *Tennessee v. Lane* (2004) 541 U.S. 509, for its purported statements that "Title II of the ADA unambiguously confers fundamental rights," and that Congress enacted the ADA "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." Yet the cited quotations do not appear in the opinion at all.[8] We consider the arguments forfeited.

Lastly, T-Alexander argues that section 391 is unconstitutional, both facially and as applied, because it does not exempt federally protected claims from those that can be considered to determine a vexatious litigant. According to T-Alexander, "the statute's failure to distinguish between ordinary civil litigation (overly-broad language) and congressionally created rights of action for a protected class (not narrowly tailored) raises serious constitutional concerns under both the Supremacy Clause and fundamental principles of federal preemption." Yet T-Alexander again merely asserts general propositions without any reasoned argument or authority. As we have explained, California's vexatious litigant statutes do not preclude the filing of federal disability

---

[8] This is not the only instance of T-Alexander including quotations in his opening brief that do not appear in the cited source. We note another such incident below.

16

complaints, and T-Alexander has failed to articulate how the statutes thwart or impede the Rehabilitation Act or ADA.[9]

## 2. *Trial court conduct and due process*

T-Alexander argues that "improper judicial conduct" violated his due process and invalidates the trial court's order. Specifically, he contends that the trial court improperly considered and relied on the 2022 lawsuit as a basis for its ruling, even though the complaint from the 2022 lawsuit was never entered into evidence. He asserts that the trial court's reliance on the 2022 lawsuit constitutes improper use of extra-record evidence; constitutional violations through extra-judicial knowledge; improper independent investigation; improper ex parte communication between trial court judges; and violation of due process.

First, we note that T-Alexander himself identified the 2022 lawsuit as a related case, and asserted that it involved the same parties, was based on the same or similar claims, and arose from the same or substantially identical transactions, incidents, or events requiring the determination of the same or substantially identical questions of law or fact as the 2023 lawsuit.

More importantly, though, it is immaterial whether the complaint from the 2022 lawsuit was entered into evidence or whether the trial court relied on it. Only the trial court's prefiling order pursuant to section 391.7 is properly before this court on appeal. And the trial court based its prefiling order on its determination that T-Alexander is a vexatious litigant pursuant to section 391, subdivision (b)(1), for having filed at least five

---

[9] T-Alexander also contends that respondents' request for judicial notice in the trial court had "merely listed federal case dispositions without providing the underlying complaints," so the trial court failed to recognize that the cases involved statutorily protected ADA and section 504 claims. However, T-Alexander has not established that the nature of the underlying complaints makes any difference in the analysis of a vexatious litigant determination pursuant to section 391.

17

pro per lawsuits in the preceding seven years that were finally determined adversely to him, which did not include the 2022 lawsuit. [10]

### 3. *No federal court vexatious litigant designation*

T-Alexander argues that the federal courts' decision not to declare him a vexatious litigant "carries significant legal weight that cannot be disregarded." He contends that the federal courts' "choice not to impose such restrictions, particularly given their special expertise in federal disability rights law, should inform any state court's consideration of the same conduct under [section 391.]"

However, T-Alexander has cited no evidence of whether any of the federal courts that presided over his prior litigation actually considered declaring him a vexatious litigant and decided not to. Nor has he cited any authority for the proposition that such a determination would be relevant or legally preclude a California court from declaring him a vexatious litigant pursuant to section 391.

### 4. *Procedural versus substantive determinations*

T-Alexander argues that because the prior federal litigation was resolved on procedural grounds, rather than on the merits of his disability claims, it cannot serve as the basis for a vexatious litigant determination pursuant to section 391.

---

[10] T-Alexander cites *People v. Superior Court (Humberto S.)* (2008) 43 Cal.4th 737, 750, for the following quotation: "a judge may not act on personal knowledge of facts not presented in evidence or conduct an independent investigation of facts not in evidence." However, no such quotation appears in that case, or in any other case this court was able to locate. In addition to the other such instance in his opening brief identified above, T-Alexander's reply brief contains numerous similar fabricated quotations. The record also shows that T-Alexander acknowledged having included inaccurate citations in briefing in the trial court. We caution appellant that such conduct violates the California Rules of Court and Code of Civil Procedure, notwithstanding the fact that he is unrepresented. (See, e.g., Cal. Rules of Court, rule 8.204(a)(1)(B) [requiring all assertions of law in brief be supported by citation to legal authority]; § 128.7, subd. (b)(2) [requiring "legal contentions" in a brief to be "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"].)

Contrary to T-Alexander's assertion, though, it is well established that "litigation is finally determined adversely to a plaintiff if he does not win the action or proceeding he began, including cases that are voluntarily dismissed by a plaintiff." (*Garcia v. Lacey* (2014) 231 Cal.App.4th 402, 406–407, citing *Tokerud v. Capitolbank Sacramento* (1995) 38 Cal.App.4th 775, 779; *In re Whitaker* (1992) 6 Cal.App.4th 54, 56.) In short, there is no requirement that prior litigation be resolved on the merits for purposes of section 391, subdivision (a)(1). Nor has T-Alexander has cited any authority for that proposition.

## III. DISPOSITION

The order is affirmed. In the interests of justice, the parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

19

_____
                                 Wilson, J.

WE CONCUR:

_____
          Grover, Acting P. J.

_____
          Lie, J.

*T-Alexander v. Baass et al.*
H052046